306 F.3d 40
 Valerie KRIMSTOCK, Charles Flatow, Ismael Delapaz, Clarence Walters, James Webb, Michael Zurlo, and Sandra Jones, individually and on behalf of all other persons similarly situated, Plaintiffs-Appellants,
v.
Raymond W. KELLY, in his official capacity as Commissioner of the New York City Police Department, Property Clerk, New York City Police Department, and the City of New York, Defendants-Appellees.
 Docket No. 00-9488.
 United States Court of Appeals, Second Circuit.
 Argued: June 20, 2001.
 Decided: September 18, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Thomas M. O'Brien, of counsel, The Legal Aid Society, Criminal Defense Division, New York, NY, for plaintiffs-appellants.
 Julie Steiner, Assistant Corporation Counsel, New York, NY, for Michael D. Hess, Corporation Counsel of the City of New York (Stephen J. McGrath, on the brief), for defendants-appellees.
 Before: JACOBS, F.I. PARKER, and SOTOMAYOR, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Defendant City of New York seizes the motor vehicles of some of those accused of driving while intoxicated and of committing other crimes for which a motor vehicle could be considered an instrumentality.[1] The City maintains possession of these vehicles in the hope of one day gaining title to them by prevailing in civil forfeiture proceedings. These proceedings generally await the resolution of criminal charges and can take months or even years to be finalized. The City claims and plaintiffs-appellants ("plaintiffs") do not contest that the proceedings are authorized, as is the seizure, by provisions of the City's Civil Administrative Code that cede to the City title to property found to be an instrumentality of crime.
 
 
 2
 Plaintiffs contend that their inability to challenge, promptly after the vehicles are seized, the legitimacy of and justification for the City's retention of the vehicles prior to judgment in any civil forfeiture proceeding violates their constitutional rights. We agree. A car or truck is often central to a person's livelihood or daily activities. An individual must be permitted to challenge the City's continued possession of his or her vehicle during the pendency of legal proceedings where such possession may ultimately prove improper and where less drastic measures than deprivation pendente lite are available and appropriate.
 
 
 3
 We vacate the judgment of the district court and remand for the court to order, after consultation with the parties, the appropriate injunctive relief.
 
 BACKGROUND
 
 4
 Plaintiffs challenge the seizure and retention of motor vehicles under a section of the City's Civil Administrative Code, N.Y.C.Code § 14-140. The City claims and plaintiffs do not contest that the statute authorizes the City's Property Clerk to take custody, following seizure, of, among other things, "all property ... suspected of having been used as a means of committing crime or employed in aid or furtherance of crime...." N.Y.C.Code § 14-140(b). Seized property is retained by the Property Clerk of the New York City Police Department until the City either loses a future forfeiture suit or decides not to pursue one and someone claims the seized property. Id. § 14-140(e); 38-A New York City Rules & Regulations ("R.C.N.Y.") § 12-36. The relevant provision of the Administrative Code states:
 
 
 5
 Where ... property ... ha[s] been used as a means of committing crime or employed in aid or in furtherance of crime..., a person who so ... used [or] employed... any such ... property or permitted or suffered the same to be used [or] employed ... or who was a participant or accomplice in any such act, or a person who derives his or her claim in any manner from or through any such person, shall not be deemed to be the lawful claimant entitled to ... such ... property ....
 
 
 6
 N.Y.C.Code § 14-140(e)(1). The statute applies to all levels of crime, not just felonies, and to all types of crimes. Moreover, it applies to all property, both real and personal.
 
 
 7
 Under the statute, the City can seize a motor vehicle following an arrest for the state-law charge of driving while intoxicated ("DWI") or any other crime for which the vehicle could serve as an instrumentality. The arraignment of the defendant in the criminal action concerns only the prosecution of the criminal charge. A defendant charged with DWI does not have a right to a post-arrest hearing to determine whether probable cause existed either for his or her arrest or for the seizure of the vehicle. Unlike a felony charge, for which a "prompt" probable cause hearing must be held or evidence of probable cause must be presented to a grand jury, N.Y.Crim. Proc. § 180.10, a misdemeanor charge of DWI requires no post-arrest determination of probable cause, id. §§ 170.10 et seq.; People v. Green, 96 N.Y.2d 195, 199-200, 726 N.Y.S.2d 357, 361, 750 N.E.2d 59 (2001) (noting, in a DWI case, that whereas the "New York Constitution requires a Grand Jury indictment for felony offenses..., misdemeanor charges may be brought on a prosecutor's information"); In re Robert L., 129 Misc.2d 742, 744, 493 N.Y.S.2d 970, 972 (Fam. Ct. Bronx Co.1985) ("There is no provision for a preliminary or probable cause hearing under the [New York] Criminal Procedure Law in misdemeanor cases."). Moreover, N.Y.C.Code § 14-140 affords the vehicle owner no opportunity for a prompt post-seizure hearing to test probable cause for the vehicle's seizure. Thus, neither New York criminal procedure nor the City's civil forfeiture law allows a DWI defendant or the owner of a vehicle driven by a DWI defendant to challenge promptly the legitimacy of the City's continued custody of the vehicle.[2] That challenge may not be made until the City seeks the vehicle's forfeiture in a separate civil proceeding that could take place months or even years after the seizure.
 
 
 8
 Upon seizing the vehicle, the police issue the arrestee a voucher for the vehicle and any other seized property. 38-A R.C.N.Y. § 12-32(a). If a claimant makes a formal demand for the return of the vehicle, the City has twenty-five days in which either to initiate a civil forfeiture proceeding under the City's Administrative Code or to release the vehicle. Id. § 12-36(a).[3] Even if the City chooses to commence a civil forfeiture proceeding within the twenty-five day period, however, the proceeding is commonly stayed until the criminal proceeding concludes. In a forfeiture proceeding, the City "bear[s] the burden of proving by a preponderance of the evidence that [it] is legally justified to continue to retain the property." Id. § 12-36(b).[4]
 
 
 9
 Vehicles belonging to the named members of the putative class in this action were seized by the City between March and May of 1999. The vehicles of six of the seven named plaintiffs — Valerie Krimstock, Charles Flatow, Ismael Delapaz, Clarence Walters, James Webb, and Michael Zurlo — were seized after each was arrested for DWI.[5] In some cases, the Property Clerk did not institute civil forfeiture actions against plaintiffs' vehicles until well over two months after the seizures. For example, Clarence Walters' car was seized on March 15, 1999. He had never been arrested for any offense before, and his DWI case in criminal court ended on June 1, 1999, when he pleaded guilty to the lesser charge of driving while impaired, a non-criminal violation. N.Y. Veh. & Traf. § 1192(1). Mr. Walters paid a fine, performed community service, and completed a Drinking Driver program that rendered him eligible for restoration of his driver's license. On June 4, more than two-and-a-half months after the seizure of his vehicle, he was served with a forfeiture complaint. At no time between June 1999 and May 2001, when his vehicle was finally released, was Mr. Walters given an opportunity to challenge the City's retention of the vehicle.
 
 
 10
 Each of the five other DWI arrestees also pleaded guilty to the lesser charge of driving while impaired. Valerie Krimstock, who at the age of forty-eight had never been arrested before, entered her plea to the lesser charge in September 1999 — some four months after she had been served with a forfeiture complaint. It was not until eleven months later, in August 2000, that a judge dismissed the forfeiture action and ordered that her 1995 Toyota, on which she had continued to make monthly payments of $273.00, be returned to her.
 
 
 11
 In the case of Charles Flatow — a retired sales manager whose car was seized on April 3, 1999 in connection with a first-time DWI arrest — the Property Clerk commenced a forfeiture action on June 15, 1999. Mr. Flatow also pleaded guilty to the lesser charge, paid a fine, and completed the required community service and Drinking Driver program. Yet by December 1999, he still had received no hearing in the forfeiture action and his car remained in police custody. As a result, Mr. Flatow had not been given an opportunity to present evidence that a prescription anti-depressant medication he was taking at the time of the arrest caused the Breathalyzer test to exaggerate the percentage of alcohol in his bloodstream.
 
 
 12
 To take yet another example, the 1995 Plymouth van owned by the seventh named plaintiff, Sandra Jones, was seized in March 1999 when her estranged husband, to whom she had lent the vehicle, was arrested for drug and weapon possession. Even though these charges were later dismissed, the Property Clerk initiated a forfeiture action in May 1999, alleging that Ms. Jones had "consented, suffered or permitted" her vehicle to be used by her husband in the commission of crimes. During the pendency of the action, Ms. Jones continued to make monthly payments of $428.06 on her impounded vehicle. In January 2000, some ten months after the police had seized it, the Property Clerk returned her van. In sum, at the time this suit was filed in December 1999, no court had yet ruled on the legitimacy of the retention of any of plaintiffs' vehicles, all of which remained in the possession of the police even though the criminal cases underlying the forfeiture actions had concluded and none had resulted in a conviction of a crime that would serve as a predicate for forfeiture.[6]
 
 
 13
 Plaintiffs brought this action under 42 U.S.C. § 1983, alleging violations of the Due Process Clause of the Fourteenth Amendment and seeking a prompt hearing following the seizure of vehicles, at which the City "must demonstrate probable cause that the car was used in furtherance of a crime and that it is necessary that the vehicle remain in the City's custody until the conclusion of the forfeiture proceeding."[7] Named plaintiffs moved for class certification pursuant to Fed.R.Civ.P. 23(a) and (b)(2) and for a preliminary injunction under Fed.R.Civ.P. 65. The City cross-moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).
 
 
 14
 The district court granted the City's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Krimstock, 2000 WL 1702035, at *7. The court rejected the City's request to dismiss plaintiffs' constitutional claims on abstention grounds, finding that the civil forfeiture proceedings under the New York City Administrative Code did not provide an adequate forum for raising these claims. Id. at *3.[8] Applying the balancing test set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine what procedural safeguards are required to satisfy the Due Process Clause of the Fourteenth Amendment in the circumstances of this case, the district court held that plaintiffs were not entitled to prompt post-seizure hearings on the question of probable cause or the legitimacy of retention pendente lite. Id. at *6-*7. Specifically, the court held that "plaintiffs' due process right to a meaningful hearing at a meaningful time does not require the additional safeguard of a probable cause hearing." Id. at *7. The court concluded that the plaintiffs' interests were adequately protected by "a probable cause arrest" and the eventual forfeiture proceeding. Id. at *6-*7. This appeal followed.
 
 DISCUSSION
 
 15
 A federal court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir.2000). Under Rule 12(b)(6), we uphold a district court's dismissal only if "it appears beyond doubt that the plaintiffs can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Id. (internal citation omitted).
 
 
 16
 Our primary focus today is the City's continued retention of vehicles after their warrantless seizure by the police and prior to the ultimate resolution of the forfeiture action in court. It is this intermediate deprivation, lasting months or sometimes years without any prompt hearing before a neutral fact-finder, that we deem constitutionally infirm. In the absence of a showing that continued impoundment constitutes a valid deprivation, seized vehicles must be released during the pendency of civil proceedings.
 
 
 17
 We reach this conclusion in light of the dictates of the Fourth and Fourteenth Amendments. In Part I, we establish a framework for analyzing plaintiffs' challenge to the probable validity of the City's post-seizure, pre-judgment retention of their vehicles, and we define "probable validity" as a due process concept that in the present case embraces the City's probable cause for initially seizing the vehicles. In Parts II and III, we discuss the applicability of the Fourth and Fourteenth Amendments to seizure and retention of personal property under civil forfeiture laws. In the course of discussing the Fourteenth Amendment, we give special attention to three areas of due process concern raised by N.Y.C.Code § 14-140 as applied to the present facts: the temporal gap that typically exists between vehicle seizure and the eventual forfeiture proceeding; the plight of innocent owners;[9] and the inadequacy of the remedies suggested by the City for addressing the propriety of continued retention of vehicles seized under § 14-140. In Part IV, we employ the three-factor inquiry prescribed by the Supreme Court in Mathews v. Eldridge to determine what procedural safeguards are required to satisfy the Due Process Clause in this case. Finding that plaintiffs' right to due process has been violated, we conclude in Part V by offering general guidance as to the prompt post-seizure retention hearing that we deem to be constitutionally required.
 
 
 18
 I. The Probable Validity of Continued Deprivation of Vehicles
 
 
 19
 Plaintiffs in this action essentially seek an early opportunity to test the City's likelihood of success on the merits of the forfeiture action, or what the Supreme Court has termed the "probable validity" of continued deprivation of a claimant's property during the pendency of legal proceedings. Cf. Comm'r v. Shapiro, 424 U.S. 614, 629, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976) ("[A]t least where irreparable injury may result from a deprivation of property pending final adjudication of the rights of the parties, the Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation or prompt post-deprivation hearing at which some showing of the probable validity of the deprivation must be made."); Fuentes v. Shevin, 407 U.S. 67, 97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ("Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, ... it is axiomatic that the hearing must provide a real test. `(D)ue process is afforded only by the kinds of "notice" and "hearing" that are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property.'") (quoting Sniadach v. Family Fin. Corp., 395 U.S. 337, 343, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring)).
 
 
 20
 For present purposes, we treat probable validity as a comprehensive due process concept that includes the City's probable cause for initially seizing vehicles. Clearly, the legality of a warrantless seizure is a component of the larger question of the probable validity of continued retention of a seized vehicle. If a seizure lacked probable cause, and the City could offer no untainted post-seizure evidence to justify further retention, the claimant's vehicle would ordinarily have to be released during the pendency of proceedings. Cf. Marine Midland Bank, N.A. v. United States, 11 F.3d 1119, 1125 (2d Cir.1993) ("[C]ourts in this circuit have ordered the return of seized property before the commencement of a [federal] forfeiture trial on the ground that the government lacked probable cause to seize the property at the time of the seizure.").
 
 
 21
 Although there is an obvious overlap between probable cause for a seizure and the probable validity of a retention, the two are not necessarily coextensive. For example, at a retention hearing, the City might succeed in showing that police officers had probable cause for seizing the vehicle of a DWI arrestee, yet be unable to establish the probable validity of continued deprivation pendente lite in the face of proof of innocent ownership or evidence that the Breathalyzer test had registered inaccurate results. Similarly, the City might establish probable cause for a seizure but fail to persuade the court that its interest in the accused instrumentality would not be protected by measures less drastic than continued deprivation. Conversely, the City might fail to establish probable cause for an initial seizure yet be able to offer post-seizure evidence showing the probable validity of retention during the pendency of proceedings. Thus, the legality of a seizure typically will be a subset of the larger due process question of the legitimacy of continued impoundment pendente lite.
 
 
 22
 II. The Role of the Fourth Amendment in Civil Forfeiture
 
 
 23
 The Supreme Court has held that the Fourth Amendment protects claimants against unreasonable seizures of their property in the civil forfeiture context. See United States v. James Daniel Good Real Prop., 510 U.S. 43, 49, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) ("The Fourth Amendment does place restrictions on seizures conducted for purposes of civil forfeiture...."); see also One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696, 700, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (holding that the exclusionary rule under the Fourth Amendment applies to civil forfeiture proceedings); cf. In re Seizure of All Funds in Accounts in Names Registry Publ'g, Inc., 68 F.3d 577, 580 (2d Cir. 1995) ("In order to seize property under [federal civil forfeiture law], the government must demonstrate that there was probable cause to believe that the property is subject to forfeiture."); United States v. Daccarett, 6 F.3d 37, 49 (2d Cir.1993) ("[T]his circuit requires seizures made pursuant to [federal civil forfeiture law] to comport with the fourth amendment."); United States v. $37,780 in U.S. Currency, 920 F.2d 159, 162 (2d Cir.1990) (same).
 
 
 24
 The Supreme Court has not said that a probable cause hearing is required after a warrantless seizure of property and before trial of a government's claim to title under a civil forfeiture law. Yet many of our laws are fashioned to ensure that a prompt hearing before a neutral judicial or administrative officer is held after the warrantless seizure of property and before full adjudication of the merits of a claim. One example is the federal civil forfeiture regime as administered by the courts of this Circuit in the context of seizures of illicit proceeds and instrumentalities. As this Court has recognized, "the seizure and forfeiture of property are two distinct events under the [federal] civil forfeiture laws." Marine Midland Bank, 11 F.3d at 1124 (citing Daccarett, 6 F.3d at 46).[10] "While both events require the government to have probable cause, the government is not required to demonstrate probable cause until the forfeiture trial unless a claimant challenges the validity of the seizure before trial." Id. (emphasis added). If the government, once challenged, cannot establish probable cause for the initial seizure or offer post-seizure evidence to justify continued impoundment, retention of the seized property runs afoul of the Fourth Amendment. Id. at 1125; see also United States v. U.S. Currency in Amount of One Hundred Forty-Six Thousand, Eight Hundred Dollars, No. 96-CV-4882, 1997 WL 269583, at *3 (E.D.N.Y. Apr.28, 1997) ("[I]f the claimant [in a federal civil forfeiture action] properly raises the issue of the government's probable cause for seizure before the forfeiture trial, and if the claimant demonstrates that the government lacked probable cause at the time of seizure, the property may be returned to the claimant until the forfeiture trial is held.").
 
 
 25
 We recognize that the likelihood of illegal seizure is reduced in the context of DWI arrests and that the City's burden of proving probable cause in such cases is not onerous.[11] We cannot agree with the district court, however, that a warrantless arrest is sufficient by itself to ensure the legality of the initial seizure. Some risk of erroneous seizure exists in all cases, and in the absence of prompt review by a neutral fact-finder, we are left with grave Fourth Amendment concerns as to the adequacy of an inquiry into probable cause that must wait months or sometimes years before a civil forfeiture proceeding takes place. Our concerns are heightened by the fact that the seizing authority in this case "has a direct pecuniary interest in the outcome of the proceeding." James Daniel Good Real Prop., 510 U.S. at 55-56, 114 S.Ct. 492; see also Property Clerk v. Hyne, 147 Misc.2d 774, 780, 557 N.Y.S.2d 244, 248 (Sup.Ct.N.Y.Co.1990) (noting that § 14-140's "remedial purposes" include the fact that "revenue is generated and applied toward the cost of law enforcement"), aff'd, 171 A.D.2d 506, 567 N.Y.S.2d 603 (1st Dep't 1991).
 
 
 26
 III. The Role of the Fourteenth Amendment in Civil Forfeiture
 
 
 27
 The government's seizure and retention of property under civil forfeiture statutes, in the absence of a meaningful hearing at a meaningful time, raise serious due process concerns under the Fourteenth Amendment. See James Daniel Good Real Prop., 510 U.S. at 62, 114 S.Ct. 492 (holding that, absent exigent circumstances, "the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture"); Fuentes, 407 U.S. at 80, 92 S.Ct. 1983 (holding, in a case involving state prejudgment replevin statutes that permitted seizure of chattels without a prior opportunity to be heard, that it is "fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner") (quotation marks omitted).
 
 
 28
 The fundamental right to notice and a meaningful hearing at a meaningful time has been recognized in many different contexts. See, e.g., James Daniel Good Real Prop., 510 U.S. at 43, 114 S.Ct. 492 (seizure of real property under federal forfeiture law); Connecticut v. Doehr, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (state ex parte attachment procedures); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (termination of municipal utility service); N. Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (prejudgment garnishment of bank account); Fuentes, 407 U.S. at 67, 92 S.Ct. 1983 (state prejudgment replevin statutes); Sniadach, 395 U.S. at 337, 89 S.Ct. 1820 (state wage-garnishment procedure). Due process is inevitably a fact-intensive inquiry. Doehr, 501 U.S. at 10, 111 S.Ct. 2105 ("[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.") (quotation marks omitted). The "timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved." Logan v. Zimmerman Brush Co., 455 U.S. 422, 434, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (quotation marks omitted).
 
 
 29
 A. Temporary Deprivations of Property Pendente Lite
 
 
 30
 Temporary deprivation of real or personal property pendente lite in a forfeiture action must satisfy the demands of the Fourteenth Amendment. The Supreme Court has held that even a brief and provisional deprivation of property pending judgment is of constitutional importance. See Fuentes, 407 U.S. at 84-85, 92 S.Ct. 1983 ("[I]t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a `deprivation' in the terms of the Fourteenth Amendment."); see also United States v. Monsanto, 924 F.2d 1186, 1192 (2d Cir.1991) (noting that a "temporary and nonfinal" removal of a defendant's assets, pursuant to a federal criminal forfeiture statute and pending resolution of the criminal case, "is, nonetheless, a deprivation of property subject to the constraints of due process") (quotation marks omitted). Plaintiffs here have not challenged the procedural safeguards under New York law that guarantee the accuracy of any final judgment of forfeiture. Instead, they question the legitimacy of and justification for the intermediate deprivation of their property occasioned after seizure of the vehicle and before judgment in civil forfeiture proceedings under N.Y.C.Code § 14-140, and, indeed, before those proceedings are even commenced. See James Daniel Good Real Prop., 510 U.S. at 56, 114 S.Ct. 492 ("The question in the civil forfeiture context is whether ex parte seizure is justified by a pressing need for prompt action."); Fuentes, 407 U.S. at 80-81, 92 S.Ct. 1983 (stating that due process is intended "to minimize substantively unfair or mistaken deprivations of property").
 
 
 31
 The district court in this case collapsed the separate issues of probable cause and due process into a single analysis and, applying the test for due process set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), concluded that plaintiffs had alleged no facts to suggest that a "probable cause arrest" is a "procedure" that is "unusually unreliable," Krimstock, 2000 WL 1702035, at *6, and further concluded that "plaintiffs' due process right to a meaningful hearing at a meaningful time does not require the additional safeguard of a probable cause hearing," id. at *7. In reaching this determination, the court applied the "speedy trial" test as deployed in the federal customs case of United States v. $8,850, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), and held that plaintiffs' due process interests are fully protected by the eventual forfeiture proceeding. Id.[12]
 
 
 32
 The district court's analysis resembles the approach taken by the New York Supreme Court in Grinberg v. Safir, in which a DWI arrestee brought an Article 78 proceeding to contest the City's seizure of his 1988 Acura for forfeiture. In response to Grinberg's Fourth Amendment challenge to the seizure and retention of his vehicle, the court, citing various warrantless arrest and seizure exceptions, held that "[o]nce an object is permissibly seized as an instrumentality during an arrest, no warrant, pretrial hearing or judicial approval is needed for retention during the criminal action." Grinberg, 181 Misc.2d at 452, 694 N.Y.S.2d at 323. The court also found that Grinberg's Fourteenth Amendment right to a meaningful hearing at a meaningful time had not been violated. Citing the speedy trial test as applied in $8,850, the court reasoned that "[i]f pendency of a criminal action is a legitimate reason for the delayed filing of a forfeiture proceeding, then retention of the subject vehicle without a hearing, while the criminal action is pending, is also permissible." Grinberg, 181 Misc.2d at 456, 694 N.Y.S.2d at 326.
 
 
 33
 For reasons discussed more fully below, we disagree with these courts' conclusions. Contrary to the district court's determination in the present case, a warrantless arrest by itself does not constitute an adequate, neutral "procedure" for testing the City's justification for continued and often lengthy detention of a vehicle which may be owned by the arrestee or by someone entirely unconnected with the conduct that gave rise to the arrest. Further, to say that the forfeiture proceeding, which often occurs more than a year after a vehicle's seizure, represents a meaningful opportunity to be heard at a meaningful time on the issue of continued impoundment is to stretch the sense of that venerable phrase to the breaking point. We also consider it a non sequitur to hold, as the Grinberg court did, that because postponing the commencement of a forfeiture action pending the underlying criminal proceeding may not offend due process, retention of the seized vehicle without a hearing throughout that same period, or longer, is constitutionally permissible. The issues of a speedy trial and a prompt retention hearing are not parallel in this context, particularly when less restrictive methods for protecting the City's interest in the allegedly offending res are available. Cf. Lee v. Thornton, 538 F.2d 27, 32 (2d Cir.1976) ("Deprivation of means of transportation for [substantial] periods requires an opportunity to be heard."); DeBellis v. Property Clerk, 79 N.Y.2d 49, 57, 580 N.Y.S.2d 157, 161, 588 N.E.2d 55 (1992) ("The core principle of the Second Circuit's McClendon decision is that, although the government may seize and hold a citizen's property for a variety of reasons in connection with a criminal or related proceeding, once those proceedings have terminated or it is determined that the property is not related to or is otherwise not needed for those proceedings, due process requires that the property be returned upon demand unless the government can establish a new basis for its detention.").
 
 
 34
 In sum, just as in the attachment and seizure cases cited above, the purpose of requiring due process in the present circumstances "is not only to ensure abstract fair play to the individual," but "more particularly, ... to protect his [or her] use and possession of property from arbitrary encroachment — to minimize substantively unfair or mistaken deprivations of property." James Daniel Good Real Prop., 510 U.S. at 53, 114 S.Ct. 492 (quotation marks and citation omitted). We conclude that plaintiffs have a right under the Fourteenth Amendment to ask what "justification" the City has for retention of their vehicles during the pendency of proceedings, cf. id. at 56, 61, 114 S.Ct. 492, and to put that question to the City at an early point after seizure in order to minimize any arbitrary or mistaken encroachment upon plaintiffs' use and possession of their property.
 
 
 35
 B. Special Due Process Concerns in the Present Case
 
 
 36
 Our concern that plaintiffs be provided an early opportunity to test the propriety of the City's retention of their vehicles, after seizure pursuant to N.Y.C.Code § 14-140 and prior to any eventual civil forfeiture judgment, is heightened by several factors. These factors include the temporal gap that typically exists between seizure of the vehicle and the forfeiture proceeding, the inability of innocent owners to challenge promptly the City's retention of their vehicles pendente lite, and the inadequacy of other suggested remedies for providing prompt post-seizure review under New York's administrative and civil codes.
 
 1. The Temporal Gap Between Seizure and Forfeiture Proceedings
 
 37
 N.Y.C.Code § 14-140 and the applicable rules leave a significant temporal gap between the moment a vehicle is seized and the time the City commences forfeiture proceedings. Although it is possible for the City to initiate a forfeiture action earlier, it need not bring such an action until twenty-five days after a claim is made for the vehicle. 38-A R.C.N.Y. § 12-36(a) ("If a timely demand is made for the return of the property before the forfeiture proceeding is instituted, such proceeding shall be brought no later than ... within 25 days after the date of demand.").[13] If no demand is made, the Property Clerk may initiate the action at its discretion. In the present case, forfeiture proceedings were commenced, at the earliest, three weeks after seizure of a vehicle, and, at the latest, well over two months after seizure. Thus, there typically exists a significant period after seizure and before the filing of the forfeiture action when the City is not held responsible for the legality of the warrantless seizure or the continued retention of the vehicle. The period between the seizure and the holding of a hearing in the forfeiture action is, of course, considerably longer.[14] It can take months or even years.
 
 
 38
 Many state forfeiture statutes, unlike N.Y.C.Code § 14-140, provide an early opportunity to challenge the governmental authority's probable cause for seizing property or the legitimacy of its retaining seized property during the pendency of proceedings. Florida's contraband forfeiture statute is one example. In upholding the Florida statute in a case involving police seizure of a vehicle from a public place, the U.S. Supreme Court observed that, although the police had not needed to obtain a warrant to seize the vehicle, the statute required that "`the person entitled to notice is notified at the time of the seizure ... that there is a right to an adversarial preliminary hearing after the seizure to determine whether probable cause exists to believe that such property has been or is being used in violation of the Florida Contraband Forfeiture Act.'" Florida v. White, 526 U.S. 559, 562 n. 2, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999) (quoting Fla. Stat. § 932.703(2)(a)). The Florida statute further provides:
 
 
 39
 Seizing agencies shall make a diligent effort to notify the person entitled to notice of the seizure. Notice provided by certified mail must be mailed within 5 working days after the seizure and must state that a person entitled to notice may request an adversarial preliminary hearing within 15 days after receiving such notice.... The seizing agency shall set and notice the hearing, which must be held within 10 days after the request is received or as soon as practicable thereafter.
 
 
 40
 Fla. Stat. § 932.703(2)(a); see also Cochran v. Harris, 654 So.2d 969, 972 (Fla.Dist. Ct.App.1995) (holding that a delay of twenty-three days beyond the ten-day limit for a hearing under § 932.703 violated the claimants' right to due process); cf. Ariz. Rev.Stat. § 13-4310(B) (providing that, upon timely application by an owner of or interest holder in property threatened with forfeiture, the court "may issue an order to show cause to the seizing agency for a hearing on the sole issue of whether probable cause for forfeiture of the property then exists"); Cal. Health & Safety Code § 11488.4(h) (providing that "[i]f there is an underlying or related criminal action, a defendant may move for the return of the property [threatened with civil forfeiture] on the grounds that there is not probable cause to believe that the property is forfeitable...."). Nothing like the procedural safeguards contained in the Florida contraband forfeiture act and similar state statutes is built into the New York forfeiture law.
 
 
 41
 In addition, many state statutes afford avenues of interim relief for claimants who are adversely affected by seizure and retention of property. For example, the Florida contraband forfeiture statute provides that if the court determines that probable cause exists to seize property, "the court shall order the property restrained by the least restrictive means to protect against disposal, waste, or continued illegal use of such property pending disposition of the forfeiture proceeding." Fla. Stat. § 932.703(2)(d). These means include "a bond or other adequate security equivalent to the value of the property." Id.; cf. Ariz.Rev.Stat. § 13-4306(G) ("An owner of property seized for forfeiture may obtain the release of the seized property by posting... a surety bond or cash...."); Cal. Health & Safety Code § 11492(c) (providing for various remedies to preserve the status quo pendente lite, including "a surety bond or undertaking to preserve the property interests of the interested parties"); N.J. Stat. Ann. § 2C:64-3(g) (providing that persons with an interest in property seized for forfeiture, except defendants prosecuted in connection with the seized property, may, after posting a bond, secure release of the property pending the forfeiture action). Again, no protections for a claimant's practical interests in seized property are provided for under the New York forfeiture law.
 
 2. Seizure of Property of Innocent Owners
 
 42
 With respect to innocent owners, the City's authority to seize property may be broader than its authority to cause the forfeiture of the property. In the due process context, the Supreme Court has shown special concern for the risk of erroneous deprivation posed to innocent owners. See James Daniel Good Real Prop., 510 U.S. at 55, 114 S.Ct. 492.[15] The impact of N.Y.C.Code § 14-140 on innocent owners is vividly illustrated by the predicament of plaintiff Sandra Jones, whose Plymouth van, which she had lent to her estranged husband, was seized in connection with her husband's arrest on drug and weapon charges. Although these charges were later dismissed, Ms. Jones was deprived of her vehicle for some ten months while continuing to make monthly auto payments on the vehicle. Ms. Jones was given no early opportunity to test the probable validity of the City's continued impoundment of her vehicle.
 
 
 43
 The forfeiture provision operates against those persons who "shall not be deemed to be the lawful claimant" to the property that has been seized by the police department. N.Y.C.Code § 14-140(e)(1).[16] The statute identifies two principal groups of those who are not "lawful claimant[s]" and whose property therefore is forfeitable. One is the person who has "used" the property "as a means of committing crime or employed [it] in aid or in furtherance of crime"; the other is the person who "permitted or suffered the same to be used or employed." Id.[17]
 
 
 44
 Thus, the seizure provision authorizes the Property Clerk to take custody, following seizure, of "all property or money suspected of having been used as a means of committing crime," N.Y.C.Code § 14-140(b), without regard to whether or not an owner who took no part in the crime "permitted or suffered" the vehicle to be used as an instrumentality of the crime.[18] A statute that authorizes the police to seize property to which the government has not established a legal right or claim, and that on its face contains no limitation of forfeiture liability for innocent owners, raises substantial constitutional concerns.[19] Because plaintiffs in this action seek only a prompt and effective means to test the legitimacy of and justification for the City's retention of their vehicles following the seizure but prior to the forfeiture proceeding, we have no occasion to rule on the constitutionality of the seizure provision itself. Nevertheless, the scope of the police seizure authority granted under § 14-140(b), together with the City's "direct pecuniary interest in the outcome of the proceeding," James Daniel Good Real Prop., 510 U.S. at 55-56, 114 S.Ct. 492, further convinces us of the need to provide a prompt opportunity for independent and neutral judicial review of the probable validity of the City's retention of vehicles pendente lite.[20]
 
 
 45
 In sum, there is a heightened potential for erroneous retention where an arrestee, whether for DWI or some other suspected criminal conduct, is not the owner of the seized vehicle. The plight of innocent owners, as exemplified by the experience of plaintiff Sandra Jones, persuades us that an early retention hearing following seizure under N.Y.C.Code § 14-140 is constitutionally required.
 
 3. Other Suggested Remedies Do Not Provide Prompt Post-Seizure Review.
 
 46
 In prosecuting vehicle forfeiture actions under N.Y.C.Code § 14-140, the City has consistently opposed motions for interim relief in the form of a retention hearing. For example, in its Memorandum of Law opposing a motion for an "immediate retention hearing" in the case of Property Clerk v. Ali, the City stated that under the CPLR there is no basis upon which defendant can even make this motion. Likewise, the CPLR does not provide for such a hearing. Defendant has circumvented the traditional rules of civil procedure by asking this court to entertain, and plaintiff to defend, against a motion that has no legal basis and a hearing that would clearly be improper under the rules.
 
 
 47
 Memorandum of Law in Support of Plaintiff's Opposition to an Immediate Retention Hearing, at 12, Property Clerk v. Ali, No. 413408/99 (Sup.Ct.N.Y.Co.). In Ali, as here, the City maintained that due process was satisfied by a resolution of the merits at the eventual civil forfeiture hearing.
 
 
 48
 Nevertheless, defendants here suggest that plaintiffs may assert their constitutional rights and challenge the City's continued retention of their vehicles through the procedural means of a Request for Judicial Intervention ("RJI") or an Article 78 proceeding brought under New York state law. We disagree. Under current law, any review of the legitimacy of the City's continued retention of a vehicle would likely come, at the earliest, months after its seizure. This delay is a result, first, of the City's need to initiate forfeiture proceedings. Assuming that a claimant requests the return of the property immediately upon seizure by the police, the City has twenty-five days in which to initiate proceedings. Only after a civil forfeiture proceeding is commenced and process is served can an owner submit a RJI. See 22 N.Y. Comp.Codes R. & Regs. § 202.6(a). Along with the RJI, a claimant files a request for a preliminary conference. See id. § 202.12(a) ("If the action has not been assigned to a judge, the party shall file a request for judicial intervention together with the request for a preliminary conference."). Under the New York rules, a "preliminary conference" is held no later than forty-five days from the request "unless the court orders otherwise." Id. § 202.6(b). The rules do not explicitly permit a determination of probable cause or the legitimacy of continued retention at the preliminary conference, or even provide for the taking of evidence, indicating that, at most, the preliminary conference may serve (as plaintiffs suggest) to set a future date for a probable cause hearing.[21] Under the current rules, therefore, any determination of probable cause for the initial seizure or the legitimacy of continued deprivation might come sometime within three months after the seizure, or perhaps much later.[22] The Fourth and Fourteenth Amendments demand a more expeditious determination of a vehicle owner's rights.
 
 
 49
 The City also suggests that an Article 78 proceeding under New York state law is available to claimants to redress any constitutional grievances. Requiring plaintiffs to resort to an Article 78 proceeding, however, would place the onus on each plaintiff to bring a separate civil action in order to force the City to justify its seizure and retention of a vehicle. This civil action provides the "[r]elief previously obtained by writs of certiorari to review, mandamus or prohibition." N.Y. C.P.L.R. 7801. To petition for mandamus, a claimant would have the burden of showing a clear legal right to the release of his or her vehicle. See Ass'n of Surrogates & Sup. Ct. Reporters v. Bartlett, 40 N.Y.2d 571, 574, 388 N.Y.S.2d 882, 884, 357 N.E.2d 353 (1976) ("[P]etitioners' success in this proceeding in the nature of mandamus requires a showing of a clear legal right to the relief sought.") (quotation marks omitted).
 
 
 50
 The City cites Grinberg v. Safir as proof that relief is currently available in an Article 78 proceeding. To challenge the City's forfeiture proceeding and retention of his vehicle, the petitioner in Grinberg filed an Article 78 action and, with it, a request for a temporary restraining order. Although the court held argument only two days after the action was filed, it denied the temporary restraining order, observing that "[l]ikely inconvenience is not proof of immediate and irreparable injury," Grinberg, 181 Misc.2d at 447 n. 1, 694 N.Y.S.2d at 320 n. 1, and eventually decided the case in favor of the City more than two months later.
 
 
 51
 In sum, we conclude that the suggested remedy of an Article 78 proceeding does not provide a prompt and effective means for claimants to challenge the legitimacy of the City's retention of their vehicles pendente lite. Cf. Fuentes, 407 U.S. at 80, 92 S.Ct. 1983 (finding unconstitutional a Pennsylvania statute that "allows a post-seizure hearing if the aggrieved party shoulders the burden of initiating one"). Furthermore, inasmuch as plaintiffs claim that the federal Constitution requires the state court to offer a remedy that is currently not available under state or local law, this constitutional challenge need not proceed through the state court before it reaches the federal courts. See Kraebel v. N.Y. City Dep't of Hous. Pres. & Dev., 959 F.2d 395, 404-06 (2d Cir.1992) (addressing the claim that an Article 78 proceeding provided all the process plaintiff was due, and finding that "[i]t is well-established that [42 U.S.C.] § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies"); cf. Logan, 455 U.S. at 432, 102 S.Ct. 1148 ("Each of our due process cases has recognized, either explicitly or implicitly, that because minimum procedural requirements are a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.") (quotation marks and alterations omitted).
 
 IV. The Mathews v. Eldridge Inquiry
 
 52
 The Supreme Court has set forth three factors to weigh in deciding whether the demands of the Due Process Clause are satisfied where the government seeks to maintain possession of property before a final judgment is rendered. See Mathews, 424 U.S. at 335, 96 S.Ct. 893. These factors should be used to evaluate the adequacy of process offered in post-seizure, pre-judgment deprivations of property in civil forfeiture proceedings. Cf. James Daniel Good Real Prop., 510 U.S. at 53, 114 S.Ct. 492 (finding that the Mathews inquiry "provides guidance" in determining whether to "tolerate" an exception to the rule requiring pre-deprivation notice and hearing). The factors include (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards; and (3) the government's interest.
 
 A. The Private Interest Affected
 
 53
 The first factor to be considered in the Mathews inquiry is "the private interest affected by the official action." Mathews, 424 U.S. at 335, 96 S.Ct. 893. The deprivation of real or personal property involves substantial due process interests. See James Daniel Good Real Prop., 510 U.S. at 53-54, 114 S.Ct. 492 (recognizing that "Good's right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance"); id. at 81, 114 S.Ct. 492 (Thomas, J., concurring in part and dissenting in part) (agreeing with the majority that "[i]ndividual freedom finds tangible expression in property rights"); Doehr, 501 U.S. at 11, 111 S.Ct. 2105 ("[T]he property interests that attachment affects are significant."); Fuentes, 407 U.S. at 70-71, 92 S.Ct. 1983 (holding that loss of household furniture and appliances warrants a pre-deprivation hearing).
 
 
 54
 The particular importance of motor vehicles derives from their use as a mode of transportation and, for some, the means to earn a livelihood. An "individual has an important interest in the possession of his [or her] motor vehicle," which is "often his [or her] most valuable possession." Lee, 538 F.2d at 31; see also Perry v. McDonald, 280 F.3d 159, 174 (2d Cir. 2001) (noting that an individual's interest in driving a vehicle represents a due process concern); Coleman v. Watt, 40 F.3d 255, 260-61 (8th Cir.1994) (stating, in the course of applying the Mathews factors to impoundment of a car under state law, that "[a]utomobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life"); Stypmann v. City & County of San Francisco, 557 F.2d 1338, 1342-43 (9th Cir. 1977) (finding a "substantial" interest in the "uninterrupted use of an automobile," upon which the owner's "ability to make a living" may depend); cf. Justice Robert H. Jackson, The Task of Maintaining Our Liberties: The Role of the Judiciary, 39 A.B.A.J. 961, 963 (1953) ("My equal right to drive an automobile may be only a claim to use of property, but it concerns my personal freedom as well.").
 
 
 55
 Other considerations as well bear on the importance of the private interest at stake. One is the availability of hardship relief under the applicable law. Cf. Dixon v. Love, 431 U.S. 105, 113, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (noting the availability, under an Illinois statute, of provisions for "hardship and for holders of commercial licenses, who are those most likely to be affected by the deprival of driving privileges"). Under the New York City Civil Administrative Code, no provision is made for situations in which the seizure and retention of a vehicle would cause particular hardship. See N.Y.C.Code § 14-140 (authorizing seizure of all property used as an instrumentality of crime).[23] Another consideration is the length of deprivation, which increases the weight of an owner's interest in possessing the vehicle. See Logan, 455 U.S. at 434, 102 S.Ct. 1148 (noting the Court's concern under Mathews for "the importance of the private interest and the length or finality of the deprivation"). As noted above, the City retains seized vehicles for months or sometimes years before the merits of a forfeiture action are addressed. Finally, the importance of the claimant's possessory interest post-seizure and pre-judgment is not diminished by the likelihood that the government will eventually prevail in forfeiture proceedings. See James Daniel Good Real Prop., 510 U.S. at 62, 114 S.Ct. 492 ("Fair procedures are not confined to the innocent. The question before us is the legality of the seizure, not the strength of the Government's case."); Fuentes, 407 U.S. at 87, 92 S.Ct. 1983 ("The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing.").
 
 
 56
 For these reasons, we cannot agree with the district court's cursory assessment of the interest at stake based solely on its observation that the seizure of the vehicles occurred "in a jurisdiction that abounds in mass transit facilities." Krimstock, 2000 WL 1702035, at *6. The seizure authority under the statute extends not only to cars registered in New York City, but to any found there; it also encompasses commercial as well as noncommercial vehicles. If the named class members serve as any indication, motor vehicle use is often found among those for whom mass transportation is inadequate. Valerie Krimstock, for example, states that the seizure of her vehicle hindered her from traveling from her residence in the Bronx to her job in North Tarrytown and from visiting her daughter who suffers from mental illness and lives in Pennsylvania. The seizure and retention of Clarence Walters' vehicle made it difficult, he reports, to reach his construction job sites — some located in areas of Long Island or New Jersey inaccessible by mass transit-and as a consequence he lost a certain amount of work. James Webb, a 77-year-old retiree, states that the seizure and retention of his vehicle made it difficult for him and his wife to see their doctors and to visit friends, and prevented him from driving his granddaughter to school.
 
 
 57
 B. The Risk of Erroneous Deprivation Through the Procedures Used and the Probable Value of Other Safeguards
 
 
 58
 The second factor to be considered under the Mathews test is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335, 96 S.Ct. 893. The particular deprivation with which we are concerned here is the City's post-seizure, pre-judgment retention of plaintiffs' vehicles. The district court concluded that the procedures used by the City — a warrantless arrest and the ultimate forfeiture proceeding-adequately protect plaintiffs against erroneous deprivation of their vehicles. Krimstock, 2000 WL 1702035, at *6-*7. We are troubled by this conclusion. Neither the arresting officer's unreviewed probable cause determination nor a court's ruling in the distant future on the merits of the City's forfeiture claim can fully protect against an erroneous deprivation of a claimant's possessory interest as his or her vehicle stands idle in a police lot for months or years.
 
 
 59
 Nevertheless, we conclude that, on balance, the second Mathews factor weighs in favor of the City. We acknowledge that the risk of erroneous seizure and retention of a vehicle is reduced in the case of a DWI owner-arrestee, because a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate. See People v. Bennett, 238 A.D.2d 898, 899, 660 N.Y.S.2d 772, 774 (4th Dep't 1997) (holding that the court properly "instruct[ed] jurors that the police officers were experts in determining a person's state of intoxication").
 
 
 60
 Yet the City's victory on the second Mathews factor is a narrow one. As noted earlier, the risk of erroneous deprivation that is posed to innocent owners is a substantial one. Moreover, our inquiry into the risk of error is partly informed by the City's pecuniary interest in the outcome of § 14-140 proceedings. As the Supreme Court has observed, greater procedural safeguards are "of particular importance... where the Government has a direct pecuniary interest in the outcome of the proceeding." James Daniel Good Real Prop., 510 U.S. at 55-56, 114 S.Ct. 492; cf. United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 110 (2d Cir.2000) ("We have previously observed the government's `virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes.'") (quoting United States v. Statewide Auto Parts, Inc., 971 F.2d 896, 905 (2d Cir.1992)).[24] Under the City's Administrative Code, property found to have "been used as a means of committing crime or employed in aid or in furtherance of crime" may, at the discretion of the police commissioner, "be used or converted to use for the purpose of the [police] department or any city, state or federal agency." N.Y.C.Code § 14-140(e)(2); see also Hyne, 147 Misc.2d at 780, 557 N.Y.S.2d at 248 (noting that the forfeiture law's "remedial purposes" include the fact that "revenue is generated and applied toward the cost of law enforcement").[25]
 
 
 61
 The Supreme Court has expressed additional concern when, as here, the "erroneous deprivation" cannot be recompensed by the claimant's prevailing in later proceedings:
 
 
 62
 [T]he availability of a postseizure hearing may be no recompense for losses caused by erroneous seizure. Given the congested civil dockets in federal courts, a claimant may not receive an adversary hearing until many months after the seizure. And even if the ultimate judicial decision is that the claimant was an innocent owner, or that the Government lacked probable cause, this determination, coming months after the seizure, "would not cure the temporary deprivation that an earlier hearing might have prevented."
 
 
 63
 James Daniel Good Real Prop., 510 U.S. at 56, 114 S.Ct. 492 (quoting Doehr, 501 U.S. at 15, 111 S.Ct. 2105); cf. Shapiro, 424 U.S. at 629, 96 S.Ct. 1062 (noting that where irreparable injury may result from a deprivation of property pendente lite, "the Due Process Clause requires ... an opportunity for some kind of predeprivation or prompt post-deprivation hearing at which some showing of the probable validity of the deprivation must be made"). In contrast, for example, to benefits for which full retroactive relief is awarded if a plaintiff ultimately prevails, see, e.g., Mathews, 424 U.S. at 340, 96 S.Ct. 893, an owner cannot recover the lost use of a vehicle by prevailing in a forfeiture proceeding. The loss is felt in the owner's inability to use a vehicle that continues to depreciate in value as it stands idle in the police lot. Cf. Property Clerk v. Duck Jae Lee, 183 Misc.2d 360, 363, 702 N.Y.S.2d 792, 795 (Sup.Ct.N.Y.Co.2000) (permitting a secured lender to intervene in a vehicle forfeiture proceeding brought against a DWI arrestee who had defaulted on monthly car payments, so that "the value of the subject car will not continue to depreciate if plaintiff lets the action languish").
 
 
 64
 In sum, because we recognize that the risk of erroneous deprivation in the context of DWI owner-arrestees is in many cases a reduced one, we conclude that the second Mathews factor weighs in favor of the City. The scales are very nearly in equipoise, however, in light of the comparably greater risk of error that is posed to innocent owners, the City's direct pecuniary interest in the outcome of forfeiture proceedings, and the lack of adequate recompense for losses occasioned by erroneous seizures of vehicles.
 
 C. The Government's Interest
 
 65
 The third Mathews factor examines "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. The City argues that it has three principal interests in continuing to retain the vehicles post-seizure and pre-judgment.
 
 
 66
 The first, and the most compelling among those the City has adduced, is to prevent a vehicle from being sold or destroyed before a court can render judgment in future forfeiture proceedings. The City cites Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), for the proposition that when property is easily transportable to another jurisdiction, the City must retain custody pending resolution of the forfeiture proceedings. The Supreme Court, indeed, recognized that immediate seizure was necessary in Calero-Toledo because otherwise the yacht at issue "might have disappeared had the Government given advance warning of the forfeiture action." James Daniel Good Real Prop., 510 U.S. at 57, 114 S.Ct. 492. We note initially that the Puerto Rican statute under which the yacht in Calero-Toledo was seized and forfeited provided that notice of the seizure must be served upon interested parties within ten days following the seizure and that those parties have fifteen days following service within which to challenge the seizure by serving a complaint on the confiscating officer. The complaint, filed in the Superior Court, "shall be heard without subjection to docket." 34 P.R. Laws Ann. § 1722(a) (repealed 1988). In Calero-Toledo, the yacht was automatically forfeited when no challenge was made to the seizure within fifteen days after service of the notice of seizure. Calero-Toledo, 416 U.S. at 668, 94 S.Ct. 2080.
 
 
 67
 The critical difference between Calero-Toledo and the present case is that plaintiffs' vehicles have already been seized and are in the hands of the police. Just as with real property seized by the government in forfeiture proceedings, there is no danger that these vehicles will abscond. See James Daniel Good Real Prop., 510 U.S. at 56-57, 114 S.Ct. 492 (discussing the need for seizure of movable property). Plaintiffs seek a determination only of whether continued retention of their vehicles by the City is valid and justified. Continued retention may be unjustified when other means of restraint would accomplish the City's goals. See id. at 59, 114 S.Ct. 492 ("In the usual case, the Government ... has various means, short of seizure, to protect its legitimate interests" in forfeitable property). To ensure that the City's interest in forfeitable vehicles is protected, claimants could post bonds, or a court could issue a restraining order to prohibit the sale or destruction of the vehicle. See id. at 58-59, 114 S.Ct. 492 (suggesting judicial means to ensure that real property is not sold or destroyed pendente lite).[26] The need to prevent forfeitable property from being sold or destroyed during the pendency of proceedings does not necessarily justify continued retention of all vehicles when other means of accomplishing those goals are available. A bond is in some respects a superior form of security because it entails no storage costs or costs of sale.
 
 
 68
 A second reason offered by the City for maintaining custody of vehicles prior to judgment in forfeiture proceedings is that the City's in rem jurisdiction over the vehicles depends upon its unbroken possession from seizure to judgment. The Supreme Court has held, however, that possession of a res during the entire course of the proceedings is unnecessary to preserve jurisdiction. See Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 88-89, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) ("We hold that, in an in rem forfeiture action, the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district."). Noting that the in rem rules had their origin in admiralty law, where a court established its jurisdiction by seizure, the Supreme Court found that "the court must have actual or constructive control of the res when an in rem forfeiture is initiated." Id. at 87, 113 S.Ct. 554 (emphasis added); cf. The Palmyra, 25 U.S. (12 Wheat.) 1, 10, 6 L.Ed. 531 (1827) (Story, J.) ("Whenever a stipulation [bond] is taken in an admiralty suit, for the property subjected to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself, and the stipulators liable to the exercise of all those authorities on the part of the Court, which it could properly exercise if the thing itself were still in its custody.").[27]
 
 
 69
 The final interest adduced by the City is the need to prevent the offending res — here, the seized vehicle — from being used as an instrumentality in future acts of driving while intoxicated. Of course, at the time of initial seizure and retention the "offending res" is only an allegedly offending res, inasmuch as the owner's or owner-arrestee's misconduct in connection with the instrumentality has yet to be established in either a criminal or a civil proceeding. Moreover, although the Supreme Court has found that certain situations of "executive urgency," James Daniel Good Real Prop., 510 U.S. at 60, 114 S.Ct. 492, call for action that dispenses with normal due process guarantees, this case does not fall within that narrow category. In defining situations of "executive urgency," the Court has provided the examples of summary seizures during wartime, seizures of contaminated food, and, formerly, the collection of taxes when the very existence of the government depended upon them. See id. at 59-60, 114 S.Ct. 492. To take one example, the Court allowed the seizure, without prior judicial process, of forty-seven barrels of poultry from a Chicago food storage warehouse after city inspectors determined they were "putrid, decayed, poisonous, or infected in such a manner as to render it unsafe or unwholesome for human food." N. Am. Cold Storage Co. v. City of Chicago, 211 U.S. 306, 308, 29 S.Ct. 101, 53 L.Ed. 195 (1908). The threat to the public was immediate, and the spoiled poultry, like contraband, was unlikely to be used for some other legitimate purpose. Motor vehicles, in contrast, present no such threat and maintain their usefulness. Cf. Austin v. United States, 509 U.S. 602, 621, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) ("`There is nothing even remotely criminal in possessing an automobile.'") (quoting One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965)). In James Daniel Good Real Property, for example, the Supreme Court found that enforcement of the drug forfeiture laws did not present "a plausible claim of urgency" strong enough to dispense with normal due process guarantees. James Daniel Good Real Prop., 510 U.S. at 61, 114 S.Ct. 492.
 
 
 70
 Even if driving while intoxicated were considered a matter of "executive urgency," the response the City has chosen, requiring the impoundment of vehicles until forfeiture proceedings are terminated, is ill-suited to address the urgency. While initial seizure of a vehicle serves the constructive purpose of keeping an individual from driving in an inebriated condition, that purpose often loses its basis in urgency once the individual has regained sobriety on the morrow.[28] Furthermore, the remedy of continued impoundment leaves the alleged offender free to drive while intoxicated in any other vehicle when the opportunity presents itself, while depriving some potentially innocent owners of the often indispensable benefits of daily access to their vehicles.
 
 
 71
 Finally, the City's asserted interest in removing dangerous drivers from the road is weakened if it extends not to all vehicles seized in connection with DWI arrests, but only to those that might yield an attractive price at auction. The November 1988 Forfeiture Guide produced by the Legal Bureau of the City of New York Police Department instructs that "[c]ertain categories of property do not warrant forfeiture litigation due to their small value or the near impossibility of a successful outcome," including "[n]on-owner operated vehicles ten years old or older," unless, inter alia, "the vehicle has a special value, e.g., an expensive import." 1988 Forfeiture Guide, at 24-25. We do not know whether this passage reflects current policy, but we note that the City's interest in safety cannot be paramount if it seeks to remove from the road only a lucrative subset of the vehicles seized from intoxicated drivers.
 
 
 72
 D. Balancing the Mathews v. Eldridge Factors
 
 
 73
 Balancing the Mathews factors, we find that the Fourteenth Amendment guarantee that deprivations of property be accomplished only with due process of law requires that plaintiffs be afforded a prompt post-seizure, pre-judgment hearing before a neutral judicial or administrative officer to determine whether the City is likely to succeed on the merits of the forfeiture action and whether means short of retention of the vehicle can satisfy the City's need to preserve it from destruction or sale during the pendency of proceedings.
 
 
 74
 In James Daniel Good Real Property, the Supreme Court concluded that to seize real property without notice and hearing, the "Government must show that less restrictive measures — i.e., a lis pendens, restraining order, or bond — would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property." James Daniel Good Real Prop., 510 U.S. at 62, 114 S.Ct. 492; cf. Statewide Auto Parts, 971 F.2d at 905 (urging district courts "whenever possible ... [to] favor less drastic measures, such as occupancy agreements, bonds, receiverships, lis pendens, or other means for preserving the status quo ante seizure until the criminality underlying the claimed forfeiture can be established in the context of a proper criminal proceeding with its attendant constitutional protections to the accused").[29] Here, once the vehicles have been seized, and concerns for establishing jurisdiction and immediate prophylactic custody are satisfied, we find that the Due Process Clause requires that claimants be given an early opportunity to test the probable validity of further deprivation, including probable cause for the initial seizure, and to ask whether other measures, short of continued impoundment, would satisfy the legitimate interests of the City in protecting the vehicles from sale or destruction pendente lite. Whether the vehicle is in the hands of the police the morning after it has been seized, as in this case, or whether James Daniel Good's property is still in his hands the morning before the marshals arrive with a warrant, the question is what reason the government has for refusing to exercise some means short of continued retention after seizure to guarantee that property will be available to satisfy a civil forfeiture judgment.
 
 
 75
 E. Inapplicability of United States v. $8,850 and the Speedy Trial Test
 
 
 76
 The City argues that the Mathews v. Eldridge balancing test is displaced by the Supreme Court's decision to apply the speedy trial test, and not the Mathews inquiry, in examining the constitutionality of any delay in the return of property subject to future civil forfeiture proceedings. See United States v. $8,850, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (applying the speedy trial test set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in finding that an eighteen-month delay in filing a customs forfeiture action did not violate constitutional due process guarantees).
 
 
 77
 We disagree. As discussed in Section III.A above, plaintiffs' claim does not concern the speed with which civil forfeiture proceedings themselves are instituted or conducted. Instead, plaintiffs seek a prompt post-seizure opportunity to challenge the legitimacy of the City's retention of the vehicles while those proceedings are conducted. The application of the speedy trial test presumes prior resolution of any issues involving probable cause to commence proceedings and the government's custody of the property or persons pendente lite, leaving only the issue of delay in the proceedings. The impoundment of property — or the incarceration of a criminal defendant — certainly increases the hardship worked by any delay. The Constitution, however, distinguishes between the need for prompt review of the propriety of continued government custody, on the one hand, and delays in rendering final judgment, on the other.[30]
 
 V. The Prompt Vehicle Retention Hearing
 
 78
 As a remedy, we order that claimants be given a prompt post-seizure retention hearing, with adequate notice,[31] for motor vehicles seized as instrumentalities of crime pursuant to N.Y.C.Code § 14-140(b).[32] There is no universal approach to satisfying the requirements of meaningful notice and opportunity to be heard in a situation such as this. See Fuentes, 407 U.S. at 96, 92 S.Ct. 1983 (acknowledging that the "nature and form of [fair prior hearings] are legitimately open to many potential variations"); cf. Green v. County Sch. Bd., 391 U.S. 430, 439, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968) ("There is no universal answer to the complex problems of desegregation; there is obviously no one plan that will do the job in every case."); Int'l Salt Co. v. United States, 332 U.S. 392, 400-01, 68 S.Ct. 12, 92 L.Ed. 20 (1947) ("The framing of decrees should take place in the District rather than in Appellate Courts. They are invested with large discretion to model their judgments to fit the exigencies of the particular case."). Moreover, the cost of additional procedures and the details of their implementation are matters peculiarly suited to the experience of the district court and the knowledge of the parties. Therefore, as we did in McClendon, 460 F.2d at 116, we leave it to the district court, in consultation with the parties, to fashion appropriate procedural relief consistent with this opinion. See Fuentes, 407 U.S. at 97 n. 33, 92 S.Ct. 1983 ("Leeway remains to develop a form of hearing that will minimize unnecessary cost and delay while preserving the fairness and effectiveness of the hearing...."); cf. United States v. City of Yonkers, 197 F.3d 41, 57 (2d Cir.1999) (noting that a district court has "broad equitable discretion to apportion remedial costs" in desegregation cases).
 
 
 79
 Although we decline to dictate a specific form for the prompt retention hearing, we hold that, at a minimum, the hearing must enable claimants to test the probable validity of continued deprivation of their vehicles, including the City's probable cause for the initial warrantless seizure. In the absence of either probable cause for the seizure or post-seizure evidence supporting the probable validity of continued deprivation, an owner's vehicle would have to be released during the pendency of the criminal and civil proceedings.
 
 
 80
 We hasten to point out that we do not envision the retention hearing as a forum for exhaustive evidentiary battles that might threaten to duplicate the eventual forfeiture hearing.[33] Inasmuch as the purpose of the hearing is the limited one of determining whether the vehicle should be returned to its owner during the pendency of proceedings, due process should be satisfied by an initial testing of the merits of the City's case. In addition, the retention hearing will allow the court to consider whether less drastic measures than continued impoundment, such as a bond or a restraining order, would protect the City's interest in the allegedly forfeitable vehicle during the pendency of proceedings.
 
 
 81
 On remand, in addition to fashioning appropriate relief, the district court should ascertain how many of the named plaintiffs have recovered their vehicles from the Property Clerk and determine whether their claims have thereby been rendered moot.[34] To the extent that mootness may affect the claims of any of the named plaintiffs, the court, in addressing the issue of class certification, should consider whether exceptions to the mootness doctrine preserve the merits of the case for judicial resolution of the unnamed class members' claims.
 
 CONCLUSION
 
 82
 In conclusion, we hold that promptly after their vehicles are seized under N.Y.C.Code § 14-140 as alleged instrumentalities of crime, plaintiffs must be given an opportunity to test the probable validity of the City's deprivation of their vehicles pendente lite, including probable cause for the initial warrantless seizure. We remand to the district court to rule on plaintiffs' request to certify their class pursuant to Fed.R.Civ.P. 23, and to formulate, in consultation with the parties, the appropriate injunctive relief needed to redress the constitutional violations examined in this opinion.
 
 
 83
 Vacated and remanded.
 
 
 
 Notes:
 
 
 [1]
 The New York City Corporation Counsel has delegated to the Property Clerk of the New York City Police Department the authority, under New York City's Administrative Code, to bring the civil forfeiture actions at issue in this appealSee Property Clerk v. Covell, 139 Misc.2d 707, 708-09, 528 N.Y.S.2d 299, 300 (Sup.Ct.N.Y.Co.1988). We refer to defendants Commissioner of the New York City Police Department, the Property Clerk of the New York City Police Department, and the City of New York, collectively, as the "City."
 
 
 [2]
 As noted below, the remedies available to those who have had their property seized under New York state civil forfeiture law (N.Y.C.P.L.R. art. 13-A) do not apply to seizures under N.Y.C.Code § 14-140. Other remedies suggested by the City, specifically a Request for Judicial Intervention and an Article 78 proceeding brought under New York state law, do not provide a prompt retention hearing, as discussed below
 
 
 [3]
 The applicable rules state that "[i]f a timely demand is made for the return of the property before the forfeiture proceeding is instituted, such proceeding shall be brought no later than ... within 25 days after the date of demand. If such proceeding is not commenced within this time period, the property clerk shall give written notice to the claimant or the claimant's representative, at his or her last known address ... that the property will be returned forthwith to that person." 38-A R.C.N.Y. § 12-36(a). Absent a demand for the return of the property, the City may commence forfeiture proceedings on its own initiative, often at the conclusion of the criminal proceedingsSee id. ("If such proceeding is instituted before the termination of criminal proceedings against the claimant, this subchapter shall not be construed to effect [sic] any right of a party to the forfeiture proceeding to have the forfeiture proceeding stayed for such period as the court may determine.").
 
 
 [4]
 This provision and several others found in the rules governing forfeitures under the present statute were adopted as a result of this Court's determination that certain aspects of the predecessor statute were unconstitutionalSee McClendon v. Rosetti, 460 F.2d 111, 114-16 (2d Cir.1972) (striking down procedures for reclaiming property after termination of criminal proceedings charging crimes unrelated to seized property). As the district court below indicated, the challenge in the instant case presents claims not considered in our previous review of the statute. Krimstock v. Safir, No. 99 Civ. 12041, 2000 WL 1702035, at *4 (S.D.N.Y. Nov. 13, 2000).
 
 
 [5]
 The state statute prohibits the operation of a motor vehicle if the driver "has .10 of one per centum or more by weight of alcohol in the person's blood." N.Y. Veh. & Traf. § 1192(2). A violation is a misdemeanor punishable by a fine or by imprisonment for not more than one year, or bothId. § 1193(1)(b).
 
 
 [6]
 Judge Jacobs does not subscribe to the four preceding paragraphs which recount and rely upon the circumstances particular to the named plaintiffs in this putative class action. His reasons are as follows: (1) The opinion implicitly generalizes from circumstances of the individual plaintiffs — for example, that this one had never been arrested before, that this one is a retired person, and so forth. The named plaintiffs in a putative class action are frequently selected to be especially sympathetic and appealing, but the rule we make will also govern vehicles seized from persons who are habitual drunks. (2) The fact that the six "DWI arrestees ... pleaded guilty to the lesser charge of driving while impaired" does not remotely call into question the arresting officer's probable cause to arrest them for drunk driving. It goes without saying that plea bargains in misdemeanor cases are offered for many reasons other than factual innocence or even insufficiency of evidence
 
 
 [7]
 Even though plaintiffs invoked Fourteenth Amendment protections in their complaint, their claims involve both the City's probable cause to believe their vehicles were subject to seizure and forfeiture (a Fourth Amendment concern, as applied through the Fourteenth Amendment) and the City's justification for retaining their vehiclespendente lite (a Fourteenth Amendment concern). We address both issues.
 
 
 [8]
 The court did abstain from hearing plaintiffs' claim that they had a due process right to a meaningful opportunity to request court-appointed counselKrimstock, 2000 WL 1702035, at *3. Plaintiffs have not raised this issue on appeal, and we therefore deem it abandoned.
 
 
 [9]
 Here and throughout this opinion, we use the phrase "innocent owner" as a term of art denoting a person who has an ownership interest in property threatened with civil forfeiture but who neither participated in nor permitted or suffered the alleged illegal use of the property, and persons who claim that status. Our use of the term is not intended to suggest that drivers or other persons initially charged with a vehicle-related crime are not presumed innocent until proven guilty in a criminal proceeding or are presumptively unlikely to prevail in a civil forfeiture proceeding
 
 
 [10]
 Marine Midland Bank involved the seizure of interbank funds under the federal civil forfeiture laws and upon a warrant issued by a federal magistrate judge, who had determined that the government had probable cause to believe that interbank accounts were being used to launder narcotics proceeds. Marine Midland Bank, 11 F.3d at 1121. The banks moved for return of the seized funds by order to show cause pursuant to Fed.R.Crim.P. 41(e). Holding that "[t]he magistrate judge's probable cause determination should be subject to judicial review," this Court found that the warrant had not been supported by probable cause and therefore ordered the release of certain of the interbank funds. Id. at 1125.
 
 
 [11]
 See People v. Earley, 244 A.D.2d 769, 770-71, 666 N.Y.S.2d 223, 224 (3d Dep't 1997) (holding that arresting officer's testimony at suppression hearing supported finding of probable cause to arrest defendant for DWI, despite contradictory testimony of defendant and his passenger and despite minor inconsistencies in officer's testimony); Grinberg v. Safir, 181 Misc.2d 444, 455, 694 N.Y.S.2d 316, 325 (Sup.Ct.N.Y.Co.) ("The seizure is simultaneous with a DWI arrest for which the police must have probable cause. The arresting officer evaluates an offense committed in his or her presence. Indicia of alcohol consumption and objective tests confirming the presence of alcohol minimize the risk of erroneous deprivation."), aff'd, 266 A.D.2d 43, 698 N.Y.S.2d 218 (1st Dep't 1999); see also People v. Mathison, 287 A.D.2d 384, 384, 732 N.Y.S.2d 2, 2-3 (1st Dep't 2001) (noting that probable cause may be demonstrated by reliable hearsay, including information provided by fellow officer present at the arrest scene).
 
 
 [12]
 The district court also citedUnited States v. Von Neumann, 474 U.S. 242, 249, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986), in declaring that "`the forfeiture proceeding, without more, provides the postseizure hearing required by due process.'" Krimstock, 2000 WL 1702035, at *5. The Supreme Court in Von Neumann, however, was addressing the different issue of what process was due in proceedings for remission or mitigation under U.S. customs laws when a claimant could challenge the seizure of his or her property in judicial forfeiture proceedings. Von Neumann, 474 U.S. at 249-50, 106 S.Ct. 610. We note that under the customs laws applicable in Von Neumann, the claimant could file a motion under Fed.R.Crim.P. 41(e) for return of the seized vehicle if he or she "believe[d] the initial seizure was improper," id. at 244 n. 3, 106 S.Ct. 610, and that, in the case of Von Neumann, Customs released the claimant's vehicle after he had posted a bond pursuant to 19 U.S.C. § 1614, id. at 246, 106 S.Ct. 610.
 
 
 [13]
 The 25-day rule under 38-A R.C.N.Y. § 12-36(a) represents a legislative expansion of the time period originally ordered inMcClendon v. Rosetti, 369 F.Supp. 1391, 1394 (S.D.N.Y.1974), which required the Property Clerk to initiate a forfeiture proceeding within 10 days after a claimant's timely demand.
 
 
 [14]
 In contrast, while the statute here requires only that a forfeiture proceeding beinitiated within 25 days after a claim is made, the California controlled substances act requires that, once a person claiming an interest in seized property files a verified claim, "the [civil] forfeiture proceeding shall be set for hearing on a day not less than 30 days therefrom, and the proceeding shall have priority over other civil cases." Cal. Health & Safety Code § 11488.5(c)(1) (emphasis added). Similarly, the civil forfeiture provision of the Wisconsin controlled substances act states that "the action shall be set for hearing within 60 days of the service of the answer but may be continued for cause or upon stipulation of the parties." Wis. Stat. § 961.555(2)(b); see also State v. Rosen, 72 Wis.2d 200, 240 N.W.2d 168, 171-72 (1976) (holding that the 60-day rule under the Wisconsin controlled substances act is mandatory and that failure to set the hearing within that period deprived the trial court of jurisdiction). In South Carolina, when a motorist is convicted of a third or subsequent DUI violation within 10 years, the vehicle may be seized and forfeited, but the vehicle's registered owner, who must be given notice within 72 hours of the confiscation, has 10 days to request a judicial hearing to determine issues concerning the owner's knowledge and authorization. "The hearing must be held within ten days from the date of receipt of the request." S.C.Code Ann. § 56-5-6240(A).
 Some legislatures have sought to mitigate the depreciation of property values and other costs incurred through delays of civil forfeiture proceedings. See, e.g., Ariz.Rev.Stat. § 13-4310(I) ("Before staying civil discovery [in a forfeiture proceeding until a related criminal trial is concluded], the court shall make adequate provision to prevent any loss or expense to any victim or party resulting from the delay, including loss or expense due to maintenance, management, insurance, storage or preservation of the availability of the property or due to depreciation in the value of the property.").
 
 
 [15]
 InBennis v. Michigan, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), the Supreme Court held that a state nuisance-abatement law under which authorities sought the forfeiture of a vehicle used for illegal sexual activity did not violate the Due Process Clause of the Fourteenth Amendment by not permitting an innocent co-owner of the vehicle to contest the abatement. Id. at 453, 116 S.Ct. 994. Unlike the federal forfeiture law at issue in James Daniel Good Real Property, however, the statute in Bennis did not provide for an affirmative defense of innocent ownership. Moreover, the Court in Bennis suggested that the apparent unfairness of the Michigan law was mitigated by the trial court's "remedial discretion" to consider whether forfeiture of a vehicle would leave its owner or owners without transportation and to order payment of one-half of any sale proceeds to an innocent co-owner. Id. at 444-45, 453, 116 S.Ct. 994. We also note that the nuisance-abatement statute in question, Mich. Comp. Laws § 600.3825, authorized "removal" and "sale" of property upon entry of an order of abatement only after the property had been deemed a nuisance in a civil action. Id. at 444 n. 3, 116 S.Ct. 994. Nothing on the face of the provision, or in the Bennis case, suggests that the statute permitted seizure and retention of property prior to adjudication of its status as a nuisance.
 
 
 [16]
 This cumbersome construction, defining those subject to forfeiture proceedings in terms of who isnot a "lawful claimant" to the property, appears to reflect the former practice under which the burden rested on a claimant to bring a civil action in replevin to obtain the return of seized property. See Hofferman v. Simmons, 290 N.Y. 449, 454, 49 N.E.2d 523 (1943) ("Since these are replevin actions, we concern ourselves not so much with the [City's] right to hold as with the [claimant's] right to recapture."). In response to a constitutional challenge to the statute, the burden of proof was shifted from the claimant to establish a lawful entitlement, to the City to establish the forfeitability of the property. McClendon, 369 F.Supp. at 1394.
 
 
 [17]
 The relevant portion of the section provides:
 Where moneys or property ... have been used as a means of committing crime or employed in aid or in furtherance of crime or held, used or sold in violation of law, ... a person who ... so used, employed, sold or held any such moneys or property or permitted or suffered the same to be used, employed, sold or held ... or a person who derives his or her claim in any manner from or through any such person, shall not be deemed to be the lawful claimant entitled to any such moneys or property....
 N.Y.C.Code § 14-140(e)(1). The statute also deems not a lawful claimant any "person who derives his or her claim in any manner from or through any such person." Id. This formulation evidently could include other potentially innocent owners and interest holders, such as secured lenders, mortgagees, and lienholders, as well as purchasers, inheritors, and other transferees of property interests.
 
 
 [18]
 It is not entirely clear whether the City has the burden of proving that the owner "permitted or suffered" a vehicle to be used as an instrumentality of crime, or whether innocent ownership is an affirmative defense to be raised by the claimant. Without deciding that question, we note that we have found one New York state court opinion that has held that the City has the burdenSee Property Clerk v. Pagano, 170 A.D.2d 30, 35, 573 N.Y.S.2d 658, 661 (1st Dep't 1991) ("[A] proceeding brought under § 14-140 differs substantially from one brought pursuant to a forfeiture statute which expressly places the burden on a claimant to establish his innocent state of mind. Clearly, § 14-140 contains no such language and, on the contrary, must be construed by its own terms to place an affirmative burden on [the City] ... of proving that respondent `permitted or suffered' the illegal use of the property.").
 
 
 [19]
 Many state statutes, while permitting seizure of forfeitable property, are much more explicit than N.Y.C.Code § 14-140 in limiting or exempting the forfeiture liability of innocent owners. These statutes generally provide for affirmative defenses by innocent owners or make proof of the owners' culpable knowledge part of the seizing authority's burden. For example, a Maine statute that permits forfeiture of a motor vehicle upon a defendant's simultaneous conviction for operating under the influence ("OUI") and operating after suspension for a prior OUI conviction, requires that the defendant be the "sole owner-operator of that vehicle." Me.Rev. Stat. Ann. tit. 29-A, § 2421(1);see also State v. One Blue Corvette, 732 A.2d 856 (Me. 1999) (holding that the statutory requirement that defendant be the "sole owner-operator of that vehicle" precluded forfeiture of a vehicle jointly owned by defendant's wife). Other state statutes contain express exceptions for a variety of innocent parties: Ariz.Rev.Stat. § 13-4304(1)-(2), (4)-(5) (common carriers; owners whose vehicles were "unlawfully in the possession of a person other than the owner" during commission or omission of an act; owners who "did not know and could not reasonably have known of the act or omission"; and bona fide purchasers for value "not knowingly taking part in an illegal transaction" and "reasonably without notice of the act or omission giving rise to forfeiture"); Cal. Health & Safety Code §§ 11470(e)-(h) (persons other than defendant with a community property interest in the vehicle; bona fide purchasers and encumbrancers), 11488.5(e) (owners who did not have "actual knowledge that the seized property would be or was used for a purpose for which forfeiture is permitted and consented to that use"); Fla. Stat. § 932.703(6)-(7) (spouses, lienholders, lessors, joint owners, and other parties lacking knowledge of the criminal activity alleged); N.J. Stat. Ann. § 2C:64-5(a)-(b) (unwitting lessors and security-interest holders; owners who show that they were "not involved in or aware of the unlawful activity and ... had done all that could reasonably be expected to prevent the proscribed use of the property by an agent"); La.Rev.Stat. Ann. § 14:98(D)(2)(b) (unwitting owners; owners of stolen vehicles); Minn.Stat. § 169A.63(7) (unwitting owners, bona fide security-interest holders, and lessors). Notably, New York state civil forfeiture statutes likewise provide a defense for innocent owners. See N.Y. C.P.L.R. 1311(4)(d)(ii)-(iii) (innocent persons subject to "adverse impact of a forfeiture"; defendants acquitted of the underlying crime), 1311(3)(b)(iv) (non-criminal defendants who either did not know "that the instrumentality was or would be used in the commission of a crime" or did not knowingly obtain an "interest in the instrumentality to avoid forfeiture"). In Property Clerk v. Ferris, 77 N.Y.2d 428, 431, 568 N.Y.S.2d 577, 579, 570 N.E.2d 225 (1991), the New York Court of Appeals stated that the "interests of justice" exception in N.Y. C.P.L.R. 1311 "is `unique' ... and nothing in the article suggests that it applies in the limited forfeiture proceedings available pursuant to Administrative Code § 14-140"; see also Property Clerk v. Deans Overseas Shippers, Inc., 275 A.D.2d 204, 205-06, 712 N.Y.S.2d 492, 493 (1st Dep't 2000) (same).
 Moreover, in contrast to § 14-140, the primary federal civil drug forfeiture statute, 21 U.S.C. § 881, contained an express "innocent owner" defense, which stated that "no conveyance shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner." 21 U.S.C. § 881(a)(4)(C). Replacing this provision, the Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106-185, 114 Stat. 202 (codified as amended at 18 U.S.C. § 983), creates a uniform innocent owner defense whereby a claimant may affirmatively prove innocent ownership by a preponderance of the evidence. 18 U.S.C. § 983(d). The statute specifically mentions owners who "did not know of the conduct giving rise to forfeiture"; bona fide purchasers or sellers for value; claimants who acquired a property interest through marriage, divorce, or legal separation; spouses or legal dependents who acquired property by inheritance or probate; and joint tenants and others with a partial interest in property.
 
 
 [20]
 In contrast, for orders of attachment granted without notice under New York state civil forfeiture law, contained at N.Y. C.P.L.R. art. 13-A, the claiming authority must move for a hearing within five days of the seizure. N.Y. C.P.L.R. 1317, 1329 (providing forex parte attachment of assets for five days, after which the attaching authority must move for an order confirming the attachment and permitting the defendant to challenge the attachment, with the burden of proof on the attaching authority to establish the grounds for the attachment, its need, and the probability of success on the merits). In upholding these provisions against doubts as to the constitutionality under the Fourteenth Amendment of ex parte pre-judgment attachment, the New York Court of Appeals relied, inter alia, on available means to challenge promptly the basis for the attachment. Morgenthau v. Citisource, Inc., 68 N.Y.2d 211, 222, 508 N.Y.S.2d 152, 157, 500 N.E.2d 850 (1986). N.Y. C.P.L.R. art. 13-A "does not limit or supersede" N.Y.C.Code § 14-140, however, and applies only to felonies and therefore has been held not to apply to forfeitures under § 14-140. Grinberg, 181 Misc.2d at 449, 694 N.Y.S.2d at 320-21 (quotation marks omitted).
 
 
 [21]
 The New York court rules include among "matters to be considered" at the conference the simplification of issues, setting a schedule for discovery, addition of necessary parties, and settlement, 22 N.Y. Comp.Codes R. & Regs. § 202.12(c)(1)-(4), and "any other matters that the court may deem relevant,"id. § 202.12(c)(5).
 
 
 [22]
 Plaintiffs have represented that, in the New York Supreme Court, First Judicial Department, Civil Branch, all forfeiture actions under N.Y.C.Code § 14-140 are assigned to the same judge, making further delays likely
 
 
 [23]
 In contrast, a provision of the federal civil forfeiture statute allows release of propertypendente lite under certain circumstances, including when "continued possession by the Government ... will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless; [and] the claimant's likely hardship... outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding." 18 U.S.C. § 983(f)(1)(C)-(D). Similarly, N.Y. C.P.L.R. 1311(4)(d) permits the dismissal or mitigation of a forfeiture action "in the interests of justice" — for example, in light of "the seriousness and circumstances of the crime to which the property is connected relative to impact of forfeiture of property upon the person who committed the crime." As noted earlier, however, N.Y. C.P.L.R. 1311 does not apply to "the limited forfeiture proceedings available pursuant to Administrative Code § 14-140." Ferris, 77 N.Y.2d at 431, 568 N.Y.S.2d at 579, 570 N.E.2d 225.
 
 
 [24]
 On several occasions, the Second Circuit has stressed that "[f]orfeiture is a harsh and oppressive procedure which is not favored by the courts."United States v. $31,990 in U.S. Currency, 982 F.2d 851, 856 (2d Cir.1993) (quotation marks omitted); cf. United States v. Lasanta, 978 F.2d 1300, 1305 (2d Cir.1992) ("While congress may have intended civil forfeiture to be a powerful weapon in the war on drugs, it would, indeed, be a Pyrrhic victory for the country, if the government's relentless and imaginative use of that weapon were to leave the constitution itself a casualty.") (internal quotation marks and citations omitted), abrogated on other grounds, Florida v. White, 526 U.S. 559, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999).
 
 
 [25]
 Some state statutes expressly admonish against governmental opportunism in seizing and forfeiting propertySee Cal. Health & Safety Code § 11469(a) ("Law enforcement is the principal objective of forfeiture. Potential revenue must not be allowed to jeopardize the effective investigation and prosecution of criminal offenses, officer safety, the integrity of ongoing investigations, or the due process rights of citizens."); id. § 11469(f) ("Seizing agencies shall avoid any appearance of impropriety in the sale or acquisition of forfeited property."); Fla. Stat. § 932.704(1) ("It is the policy of this state that law enforcement agencies shall utilize the provisions of the Florida Contraband Forfeiture Act to deter and prevent the continued use of contraband articles for criminal purposes while protecting the proprietary interests of innocent owners and lienholders and to authorize such law enforcement agencies to use the proceeds collected... as supplemental funding for authorized purposes. The potential for obtaining revenues from forfeitures must not override fundamental considerations .... It is also the policy of this state that law enforcement agencies ensure that, in all seizures made under [the Act], their officers adhere to federal and state constitutional limitations regarding an individual's right to be free from unreasonable searches and seizures....").
 
 
 [26]
 We note that in contrast to the forfeiture statute at issue in the present case, the Puerto Rican statute inCalero-Toledo required that seized motor vehicles be appraised for their monetary value by the Office of Transportation and that plaintiffs "have the right to give bond ... to answer for the seizure if the lawfulness of the latter is upheld." 34 P.R. Laws Ann. § 1722(b) (repealed 1988).
 
 
 [27]
 In addition, we note that the City does not caption these civil forfeiture actions as proceedingsin rem. Instead, they are styled as in personam actions — for example, Property Clerk v. Ismael Delapaz.
 
 
 [28]
 A claimant's proven history of persistent drunkenness or repeated DWI violations, however, might justify a fact-finder in denying release of the vehiclependente lite.
 
 
 [29]
 InStatewide Auto Parts, this Court considered a due process challenge to the federal government's seizure of real and personal commercial properties pursuant to an ex parte warrant and the federal civil forfeiture statute. Statewide Auto Parts, 971 F.2d at 898-99. In other cases involving seizure of real property, this Court has been careful to emphasize the value of less drastic means than seizure for protecting the government's interest in forfeitable property. See, e.g., United States v. Premises & Real Property at 4492 South Livonia Road, Livonia, N.Y., 889 F.2d 1258, 1265 (2d Cir.1989) ("Any exigency that might be posed by the threat of an encumbrance on, or transfer of, the property may be met by less restrictive means than seizure, for example, by the filing of a lis pendens, as was done in this case, along with a restraining order or bond requirement."); see also United States v. Puello, 814 F.Supp. 1155, 1164 (E.D.N.Y.1993) (stating that, "[m]indful of [the Second Circuit's] warning [to use less restrictive means than outright seizure], the Court has explored the possibility of these less drastic means with the parties."); United States v. Joseph Health & Beauty Supply, 807 F.Supp. 323, 325 (S.D.N.Y.1992) (permitting a claimant to occupy seized business premises for the conduct of lawful business pending trial, as a less restrictive measure than outright seizure of the leasehold under federal forfeiture law); cf. 18 U.S.C. § 983(f)(7), (j) (providing for restraining orders, injunctions, bonds and other means to preserve property during litigation); Supplemental Rules for Certain Admiralty and Maritime Claims, Rule E(4)(f) (providing, except where the United States is seeking forfeiture, for a "prompt hearing at which the plaintiff shall be required to show why the arrest or attachment [of property] should not be vacated or other relief granted consistent with these rules"); Fla. Stat. § 932.703(d) (providing that, if the court determines that probable cause exists to believe that property was used in violation of the state contraband forfeiture statute, "the court shall order the property restrained by the least restrictive means to protect against disposal, waste, or continued illegal use," including such means as a "bond or other adequate security equivalent to the value of the property").
 
 
 [30]
 We also note that this Court has observed, in the context of the federal forfeiture laws, that "under theBarker [speedy trial] test, which we think applies to the holding of the forfeiture trial as well as to the filing of the action, there is a due process violation at some point." United States v. Banco Cafetero Panama, 797 F.2d 1154, 1163 (2d Cir.1986). "The Government argues that, once an action is filed, delays of any length may be granted to allow completion of related criminal proceedings. To require prompt filing of a forfeiture action but allow indefinite postponement of the trial would reduce the filing requirement to a nullity." Id.
 
 
 [31]
 Pursuant to 38-A R.C.N.Y. § 12-32, the voucher issued to an arrestee by the police upon arrest and seizure must notify the arrestee of procedures for demanding the return of property and the possible actions that the Property Clerk may take after the demand has been madeSee also Butler v. Castro, 896 F.2d 698, 702 (2d Cir.1990) ("[A] voucher must be given to an arrestee for non-contraband property seized [and] must also give notice of the procedures to be followed to recover such property."). Adequate notice of the right to a post-seizure retention hearing could readily be added to this information. This procedure may not be adequate, however, where the arrestee and the vehicle owner are not the same person.
 
 
 [32]
 We note that both parties appear to agree that plaintiffs' vehicles were not seized as "arrest evidence" pursuant to N.Y.C.Code § 14-140(b) but rather as instrumentalities of crime. According to the City: "The seven named plaintiffs [have had their vehicles] impounded and held by the Property Clerk for forfeiture, because they were used in furtherance of a crime." In any event, it is hard to imagine how an arrestee's vehicle could serve as evidence in the ordinary DWI case
 
 
 [33]
 For example, we do not expect that these limited hearings will resemble the sometimes prolonged pretrial hearings that district courts in this Circuit have conducted to address probable cause for the government's seizure of property under federal forfeiture lawsSee, e.g., Names Registry Publ'g, 68 F.3d at 579 (noting that the district court below had held a two-day pretrial hearing to examine probable cause for an ex parte seizure of bank funds under federal forfeiture law); Daccarett, 6 F.3d at 45 (three-day pretrial evidentiary hearing to examine probable cause for seizure of electronic transfer funds under federal forfeiture law); Statewide Auto Parts, 971 F.2d at 900 (oral argument followed by further written evidentiary submissions on the issue of probable cause to seize real and personal commercial properties under federal forfeiture law); see also In re Seizure of All Funds in Accounts in Names Registry Publ'g, Inc., 887 F.Supp. 435, 449 (E.D.N.Y.) ("[I]f a claimant challenges the validity of a seizure, ... then the merits of the forfeiture trial are expedited and the government must establish probable cause for the forfeiture prior to the forfeiture trial."), vacated on other grounds, 68 F.3d 577 (2d Cir. 1995). Unlike federal forfeiture actions, which often involve complex evidentiary issues, multiple parties and witnesses, and elaborate underlying criminal allegations, actions instituted against vehicle owners under the New York City forfeiture statute typically present relatively discrete, straightforward issues.
 
 
 [34]
 At the time of oral argument before this Court, three of the seven named plaintiffs — Jones, Krimstock, and Walters — had recovered their vehicles. Inasmuch as plaintiffs primarily seek relief in the form of a preliminary injunction and class certification, the question arises whether the claims of some plaintiffs have been rendered moot, and this is a question that a court must addresssua sponte. The Supreme Court has held in some cases, however, that "the termination of a class representative's claim does not moot the claims of the unnamed members of the class.... That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction.... In such cases, the `relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." County of Riverside v. McLaughlin, 500 U.S. 44, 51-52, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (internal quotation marks and citations omitted); see also Sosna v. Iowa, 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (same); cf. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 399, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) ("Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.") (citing Gerstein v. Pugh, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)); Comer v. Cisneros, 37 F.3d 775, 798-99 (2d Cir.1994) (noting that in some cases in which the claims of named plaintiffs have become moot prior to class certification, "the courts permit the class certification to relate back to the filing of the complaint and hold that the plaintiffs have properly preserved the merits of the case for judicial resolution"); Robidoux v. Celani, 987 F.2d 931, 938-39 (2d Cir.1993) (same).