Sandra **JONES**, Clarence **Walters**, **James Webb**, **Michael Zurlo**, **Valerie Krimstock**, **Charles Flatow**, and **Ismael Delapaz**, Plaintiff–Appellees,

v.

Raymond **KELLY**, Property Clerk, and City of New York, Defendant–Appellants.

**Docket Nos. 03–9232–EV(L), 04–0147(CON).**

United States Court of Appeals, Second Circuit.

Argued: May 25, 2004.

Decided: Aug. 5, 2004.

Julie Steiner, Assistant Corporation Counsel, for Michael A. Cardozo, Corporation Counsel of the City of New York (Leonard Koerner, Chlarens Orsland, and Julie Steiner, Assistant Corporation Counsels, on the brief), New York, NY, for Defendant–Appellants.

Thomas O'Brien, The Legal Aid Society, Brooklyn, NY, for Plaintiff–Appellees.

Alan Gadlin, for Amicus Curiae New York State District Attorneys Association (Michael A. Arcuri, Mark Dwyer, Anthony J. Girese, and Alan Gadlin, on the brief).

Before: VAN GRAAFEILAND, SACK, and WESLEY, Circuit Judges.

WESLEY, Circuit Judge.

In 1999, plaintiffs' vehicles were seized and retained as instrumentalities of a crime pursuant to the City of New York's forfeiture statute, N.Y.C. Admin. Code § 14–140. The police seized vehicles from six of the seven named plaintiffs when those individuals were arrested for operating a motor vehicle while under the influence of alcohol or drugs ("DWI"). The seventh plaintiff's vehicle was seized when her estranged husband borrowed the vehicle and was arrested for drug and weapons possession. Plaintiffs commenced this putative class action challenging the constitutionality of the forfeiture statute and seeking appropriate injunctive relief. The district court dismissed the case, but in a thorough and thoughtful opinion a panel of this Court reversed. *See Krimstock v. Kelly*, 306 F.3d 40 (2d Cir.2002) ("*Krimstock I*"), *cert. denied*, —— U.S. ——, 123 S.Ct. 2640, 156 L.Ed.2d 675 (2003).

Those earlier efforts in this matter fully explored the factual and statutory background of the dispute and we see no need to revisit it here. For the purpose of this appeal, it is sufficient to note that this Court held that due process concerns, as embodied in the Fourth and Fourteenth Amendments, required that the City provide prompt post-seizure retention hearings with adequate notice to the owners of the vehicles. *Id.* at 69–70. In completing its work the Court directed "that promptly after their vehicles are seized under N.Y.C.Code § 14–140 as alleged instrumentalities of a crime, plaintiffs must be given an opportunity to test the probable validity of the City's deprivation of their vehicles *pendente lite,* including probable cause for the initial warrantless seizure." *Id.* at 70. We remanded the case to the district court "to rule on plaintiffs' request to certify their class pursuant to Fed. R.Civ.P. 23, and to formulate, in consultation with the parties, the appropriate injunctive relief needed to redress the constitutional violations." *Id.* at 70–71.

At some point in time—we will explore the chronology of events shortly—the case took a significant turn. The first round of litigation focused solely on the City's contention that it could seize and retain vehicles for forfeiture as instrumentalities of a crime. No party asserted—much less litigated—that the vehicles in question had been seized and held because they constituted "arrest evidence" of the underlying criminal charges that might be offered at trial. Indeed, this Court commented in footnote 32 of *Krimstock I* "that both par-

ties appear to agree that plaintiffs' vehicles were not seized as 'arrest evidence' pursuant to N.Y.C.Code § 14–140(b) but rather as instrumentalities of crime." *Id.* at 69 n. 32. Fatefully, the footnote concludes: "In any event, it is hard to imagine how an arrestee's vehicle could serve as evidence in the ordinary DWI case." *Id.*

Following the remand in *Krimstock I,* the district court solicited the views of the parties with regard to the structure of the class and the content of the Court's injunction. Under Title 38, chapter 12, subchapter B of the City's rules and regulations, a district attorney's release of property indicates that the property is no longer needed as evidence. 38 New York City Rules & Regulations ("R.C.N.Y.") § 12–34(c). In July 2003, plaintiffs urged the Court not to require release of a vehicle by the district attorney as a precondition to a post-seizure hearing. Plaintiffs contended that footnote 32 logically established that a vehicle was not likely to be of any evidentiary value in an "ordinary" DWI case. They argued that assistant district attorneys were already overburdened with heavy caseloads. Requiring a release of the vehicle from the prosecutor handling the criminal case would therefore ensure additional and unnecessary delay in effectuating post-seizure retention hearings. Plaintiffs conceded that some mechanism was necessary to allow district attorneys to prevent release in instances in which a district attorney had legitimate concerns that the vehicle was necessary for the prosecution of a criminal action.[1]

The City objected to abrogating the release requirement. The City noted that to do so would "hamper the District Attorney's ability to safeguard trial evidence."

The City also argued that "[n]othing in the *Krimstock* decision changes this practice."

In early September 2003, the district court issued a draft order for comment by the parties that established a hearing for vehicles seized as arrest evidence or as an instrumentality of a crime. The order addressed an earlier objection by the City that the criminal courts not be used for post-seizure retention hearings and accepted the City's suggestion instead to conduct hearings through the Office of Administrative Trials and Hearings ("OATH"). The draft order rejected the need for the district attorney's release as a pre-condition to a hearing, but gave OATH judges the power to deny release if the vehicle was properly designated as arrest evidence. The draft order thus shifted a procedural burden from the complainant to the prosecutor. Rather than requiring the defendant to obtain clearance from the prosecutor before seeking return of a vehicle, the order compelled the prosecutor to establish why the vehicle should be held as evidence.

The City responded in early October 2003 by noting that "arrest evidence" was not part of the lawsuit or *Krimstock I.* The City continued to maintain that the district court could not incorporate a mechanism that interfered with the ability of a prosecutor to prepare and present a criminal case. The City then asserted that between 1,800 and 2,000 cars were being held as arrest evidence at that time.

In response, the plaintiffs argued that the newly disclosed number of arrest-evidence vehicles coincided with the number of cars then held for forfeiture. They also asserted that the district attorneys had stopped giving releases for vehicles until corollary criminal proceedings were

---

1. While it appears that the vast majority of vehicles in question were seized during DWI arrests, the record on appeal does not contain the precise numbers of seized vehicles for other criminal offenses.

terminated, thus effectively delaying all forfeiture proceedings because, under the statute, those proceedings could not be commenced without a "timely demand" that included a district attorney's release, 38 R.C.N.Y. §§ 12–35(b), 12–36. In their view, the significantly larger number of arrest-evidence vehicles became, therefore, "simply a reflection of the large number of impounded cars in pending criminal cases, for which the owners had been unable to obtain a release." Plaintiffs complained to the district court that the increase in the number of arrest-evidence cars was "exactly the kind of deliberate mislabeling that makes individualized due process protection in each case, as the *Krimstock* [sic] hearing provides, an absolute necessity."

Not surprisingly, the City's district attorneys joined the fray. In October 2003, they complained to the district court that a civil court (OATH) could not order the return of property designated as arrest evidence by a prosecutor; that the district attorneys would not be aware of the post-seizure hearings in the civil courts; and that evidentiary determinations are often fluid matters in which evidence only becomes relevant after being confronted with the accused's defense. The prosecutors noted that in some DWI cases defendants might contend at trial that a defect in the vehicle caused the car to malfunction (swerve or not brake properly) and thus the "malfunction" was not indicative of alcohol- or drug-induced impairment of one's ability to drive. Retention of the vehicle would be necessary to establish that the vehicle was mechanically sound.

In apparent recognition of the prosecutors' legitimate concerns that the law has traditionally left the designation and retention of evidence to the one who bears the burden of proving the crime—the district court amended the draft order on October 24, 2003. The new procedure continued to apply to vehicles seized as arrest evidence or as an instrumentality of a crime. However, it required that notice of the OATH post-seizure retention hearing be given to the appropriate district attorney, and authorized OATH judges to order continued retention of vehicles when necessary to ensure their availability as evidence. A vehicle release order issued by an OATH judge could be nullified by an order of a Justice of the New York Supreme Court or a Judge of the New York City Criminal Court that designated the vehicle as arrest evidence. And, no vehicle could be released without its driver waiving all claims and defenses in the criminal proceeding alleging a defect in the vehicle or other factual assertion based on the vehicle's condition at the time of seizure.

Shortly after the district court issued its new and final order, the City asked for 90 days to implement the new procedures. The court granted that request, extending the effective date of the order to January 23, 2004, and denied a subsequent request for a continued delay in implementation. The district court's order required the City to give notice to all owners of vehicles held before January 23, 2004 that their vehicles were being retained as evidence or for forfeiture. The order's other requirements are prospective only. Thus, post-seizure hearings for vehicles seized before January 23, 2004 will only be on demand by the owner. The City appealed and sought a stay of the district court's order. On January 16, 2004, a single judge of this Court denied the City's request for a temporary stay. On January 30, 2004, a three-judge panel of this Court again denied the City's stay request.

The parties and *amicus* New York State District Attorneys Association argue forcefully and eloquently for, and against, the district court's order. The City correctly

notes that *Krimstock I* challenged only the forfeiture statute and the absence of a timely post-seizure retention hearing. The City notes that it has no quarrel with the district court's resolution of our mandate in that regard. However, the City cautions that because the policy and constitutional concerns with regard to the seizure and retention of arrest evidence are significantly different, we should reverse the district court's order and direct the court to confine itself to that which was litigated and decided in *Krimstock I*. Most notably, the City reminds us that the balancing test dictated by *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and employed in *Krimstock I* to measure competing due process concerns in forfeiture cases will be significantly altered—favorably to prosecutors—if the preservation of arrest evidence is added to the equation. The City also notes that the New York Court of Appeals has recently entered this juridical discussion in *County of Nassau v. Canavan*, 1 N.Y.3d 134, 770 N.Y.S.2d 277, 802 N.E.2d 616 (2003). The state high court took favorable notice of our efforts in *Krimstock I* and embraced, on state and federal constitutional grounds, the need for post-seizure retention hearings in forfeiture statutes. The City worries that the district court's order will single out New York City for broader and more cumbersome procedures because it includes arrest evidence.

The *amicus* joins the City but asserts that *Mathews* has no application to the authority of prosecutors to hold and preserve property to build and win a criminal prosecution and fears that the process will unduly tax already overburdened prosecutors' offices. The *amicus* also contends that owners of seized vehicles have adequate remedies as to arrest evidence under state law and the city code. Lastly, the *amicus* and the City express concern that probable cause rulings by OATH judges

might affect the underlying criminal proceedings and question the legitimacy of waiving a defense to a criminal charge as a pre-condition to the return of one's vehicle.

Understandably, this case looks quite different to plaintiffs. Plaintiffs press the view that the district court was given broad discretion to effectuate the constitutional protections identified in *Krimstock I* and to delineate the class covered by the order. They stress that the district court conferred, as directed by this Court, with the parties and attempted to fashion an order. Plaintiffs contend that when the court was confronted with the classification of a large number of vehicles as arrest evidence, it had no choice but to consider the concerns raised by the prosecutors and the City while attempting to establish a viable remedy. Plaintiffs point to the numerous accommodations made by the district court—(1) designating OATH as the tribunal; (2) providing for notice of the post-seizure hearing to the appropriate district attorney; (3) empowering OATH judges to impound arrest-evidence vehicles; (4) allowing Criminal Court Judges and Supreme Court Justices to nullify release orders; and (5) granting the City additional time to comply with the order—as specific examples of the district court's attempt to exercise its discretion in an evenhanded manner.

Plaintiffs also argue that the factual predicate for forfeiture is not significantly different from the standard for the designation of arrest evidence. Property is subject to forfeiture if it is an instrumentality of a crime, N.Y.C. Admin. Code § 14–140, while arrest evidence is property "taken from the person or possession of an individual ... because of its relation to the matter for which the person has been arrested," 38 R.C.N.Y. § 12–31. Plaintiffs contend that the definitions make "shifting a seized vehicle to the 'arrest evidence'

category an easy task." Plaintiffs press that we should not allow the labeling of a vehicle as arrest evidence to obviate the need for a hearing. In their view, the prosecutors' assertion that arrest-evidence vehicles are exempt from due process analysis is overstated. The *Mathews*-based equation is not, in actuality, different in substance, only in degree.

Plaintiffs are understandably happy with the district court's solution. They point to its balance and further note that in their last appearance in district court, the Brooklyn District Attorney's office reported that it reduced the number of vehicles held as evidence to 150 and the Bronx District Attorney's office effected a similar reduction.

The City indicates it was surprised by the district court's inclusion of arrest evidence seizures in its draft order. Shortly thereafter, the City notified the court of the exceptionally large number of arrest-evidence vehicles. A cynic might speculate that the City, in response to footnote 32's clarification that arrest evidence seizures were not covered by this Court's earlier opinion, simply altered the basis for holding the vehicles in question in an attempt to thwart this Court's efforts. Others less cynical might conclude that the district attorneys of the five counties of New York City reclassified the vehicles as a careful precaution to preserve evidence. It is, after all, the district attorney's job to try criminal cases within his or her jurisdiction. Still others might conclude that law enforcement officials initially view all vehicles involved in a crime as potential evidence. According to this view, classifying a vehicle as evidence is just one step in evaluating a criminal case. If the vehicle has no evidentiary value, it then may be subject to the forfeiture statute analyzed by this Court in *Krimstock I*.

Plaintiffs, however, point to the last sentence of footnote 32 to argue that the prior panel was right—it is hard to imagine how an arrestee's vehicle could serve as evidence in the ordinary DWI case. In their view, the vehicles in question would rarely, if ever, have any evidentiary relevance to a criminal case. Thus, to the plaintiffs, even vehicles designated as arrest evidence were fair game for the district court to consider in carrying out this Court's mandate. Plaintiffs further contend that the district court appropriately exercised its discretion in this regard to allow the district attorneys to identify extraordinary DWI cases and other criminal matters in which a vehicle might serve as important trial evidence.

It might be possible to conclude that the City was consciously attempting to thwart the district court's efforts to fashion an effective order. Indeed, if this were the case, we would be hard pressed to say that the district court did not have the inherent power to fashion a remedy that would ensure that plaintiffs' due process rights were protected. *See In re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir.1981). Nonetheless, the district court made no findings as to the necessity of including arrest evidence in its order.

While the parties have argued at length about the impact of the district court's order on effective prosecution of criminal cases in New York, the district court did not conduct an evidentiary hearing to test the legitimacy of those assertions. Plaintiffs' brief highlights the drastic reduction in the number of arrest-evidence vehicles from an initial figure in the thousands, to under 200 in both the Bronx and Brooklyn, and although that portion of the order that the City and the prosecutors find objectionable was not stayed, no additional data was offered to supplement the record. In addition, we have no way of knowing how

many of the arrest evidence cars are associated with DWI charges or with other crimes. We must confess that we share the skepticism expressed in footnote 32 by our brother and sister judges in *Krimstock I*. It remains hard for us "to imagine how an arrestee's vehicle could serve as evidence in the *ordinary* DWI case." *Krimstock I*, 306 F.3d at 69 n. 32 (emphasis added). There will always be extraordinary cases, but we tend to agree with our colleagues—they probably are very few in number.

Judicial decision-making should not occur without fixed, established points of reference. Because there are no established "facts" in this case, we are left with supposition and innuendo. Is the City's concern that criminal prosecutions will be encumbered by post-seizure hearings that include arrest evidence legitimate or imagined? Is the City contumacious or cautious? We cannot tell. Thus, we are compelled to remand this matter to the district court to establish a record of the actual number of vehicles involved in current prosecutions as trial evidence, and, perhaps, to compare relevant figures for past prosecutions over an appropriate period of time. We caution the parties that the district court has broad discretion to ensure that the mandate of the prior decision of this Court is carried out, and, further, that conduct intentionally seeking to thwart that mandate should be dealt with accordingly. We have every confidence that following a careful examination of the record, the district court will consider the legal arguments of the parties in light of the facts and rule accordingly.

Thus, while we vacate in part the district court's order and remand the matter for further proceedings, we do so not because the order suffers from flawed legal reasoning, as to which we take no position, but because it is premised on assumptions and conclusions that have not yet been tested in a hearing. We urge the district court to continue to press this matter as it has in the past to seek a speedy completion of the hearing. It may well be that the number of vehicles held as arrest evidence has dwindled to so few that the order as currently constructed does not present an encumbrance to the prosecution of criminal cases, or that it is of such insignificance that arrest-evidence vehicles need not be included in the sweep of the order. Only time and a fact-finding hearing will tell.

Accordingly, we affirm the district court's order as it relates to cars held for forfeiture. We vacate and remand the order, as it relates to cars held as arrest evidence, for further proceedings in accordance with this decision.