**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Stephen J. TREADWAY and Kenneth W. Corba, Defendants.**

**No. 04 Civ. 3464(VM).**

United States District Court, S.D. New York.

Jan. 4, 2005.

Dorothy Heyll, New York City, Nicolas Morgan, Los Angeles, CA, Rachel Lois Izower, New York City, for Plaintiff.

Alan Levine, Kronish Lieb Weiner & Hellman, L.L.P., Richard Mark Strassberg, Goodwin Procter LLP, New York City, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

The Court now has before it two motions filed by defendants Stephen J. Treadway ("Treadway") and Kenneth W. Corba ("Corba"). Treadway has filed a motion for reconsideration of the Court's Decision and Order dated October 22, 2004, and reported as *SEC v. Pimco Advisors Fund Management LLC,* 341 F.Supp.2d 454 (S.D.N.Y.2004) (hereinafter, *"Pimco I"*),

which denied in its entirety Treadway's motion to dismiss the Securities and Exchange Commission's ("SEC's") Complaint alleging that he violated various federal securities laws and regulations promulgated thereunder. Corba has filed a motion to dismiss portions of the First Amended Complaint filed by the SEC on November 10, 2004 ("Amended Complaint"), which attempts to correct deficiencies in certain of the claims the SEC made against him that were identified by the Court in *Pimco I*.

For reasons discussed below, both Treadway's and Corba's motions are denied in their entirety.

## I. *TREADWAY'S MOTION FOR RECONSIDERATION*

■■■ Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Schaffer ex rel. Lasersight, Inc. v. CC Investments, LDC*, 99 Civ. 2821, 2003 WL 22480052 at *1 (S.D.N.Y. Oct. 31, 2003) (quoting *In re Health Management Sys. Inc. Secs. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y.2000)). Under Local Civil Rule 6.3, in order to prevail on a motion for reconsideration, a moving party must demonstrate that the court overlooked controlling law or a factual matter that might reasonably be expected to have altered the court's decision. *See id.*; *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y.1999). "The decision to grant or deny a motion for reargument is within the sound discretion of the district court." *Shamis*, 187 F.R.D. at 151.

Treadway's motion for reconsideration argues that *Pimco I* overlooked the original Complaint's lack of any specific factual allegations that Treadway was aware of the investment of "sticky assets," *i.e.*, long-term investments of capital, by Canary Capital Partners LLC ("Canary"), at the time he allegedly authorized Canary to engage in market timing activities in certain funds within the PIMCO Funds: Multimanager Series collection of mutual funds ("PIMCO Funds"). According to the motion, the Court's purported failure to consider that Treadway was not alleged to have been aware of Canary's placement of sticky assets in the PIMCO Funds rendered suspect the Court's decision that the Complaint adequately alleged Treadway's violation of Section 36(a) of the Investment Company Act, which subjects those who engage in acts or practices "constituting a breach of fiduciary duty involving personal misconduct," 15 U.S.C. § 80a–35(a), to severe sanctions. (*See* Defendant Stephen J. Treadway's Brief in Support of his Motion for Reconsideration, dated Nov. 10, 2004 ("Treadway Br.") at 1–2.) Those sanctions may include a permanent injunction barring a violator of Section 36(a) from working in many facets of the national securities industry.

The Court finds Treadway's motion wholly without merit. As the SEC points out in opposition to Treadway's motion, the Court specifically considered and rejected Treadway's argument that the Complaint does not adequately allege Treadway's "full knowledge of the Canary relationship," *including* Treadway's knowledge that Canary had agreed to place sticky assets in certain of the PIMCO Funds in exchange for market timing capacity. *See Pimco I*, 341 F.Supp.2d at 465–66; *id.* at 471 (rejecting Treadway's argument that the Complaint fails to allege his full knowledge of the nature of the Canary relationship in sustaining the Section 36(a) claim against him). The Court found in *Pimco I* that Treadway's knowledge of Canary's placement of sticky assets in certain PIMCO Funds could be inferred from the Complaint's references to Treadway's alleged conversations with Corba about the Canary relationship. Furthermore,

Treadway's knowledge of specific benefits arising out of the Canary–PIMCO relationship provides a motive for Treadway's alleged authorization for Canary to continue to engage in undisclosed market timing activities even after he was aware of their detrimental effects. Whether these allegations may be proven by admissible evidence is a matter appropriately addressed at a later stage of the proceedings.

■ The Court also concludes that Treadway may be found liable for violation of Section 36(a) even if he lacked specific knowledge of the sticky asset agreement at the time he allegedly authorized Canary to engage in undisclosed, detrimental market timing activities. In his motion, Treadway acknowledges that the Complaint alleges Treadway's interest in "forming a relationship with a wealthy and reputable family" (Treadway Br. at 4), *i.e.* the Stern family, which owned Canary, at the time he allegedly approved Canary's undisclosed market timing activities. A factfinder could reasonably conclude that Treadway's desire to form a relationship with Canary, a wealthy and powerful investor, led him to violate his fiduciary duty towards other PIMCO Funds investors by placing Canary's interests over the interests of those who were unaware of the existence of the Canary relationship, and its potential detrimental effects on the PIMCO Funds, at the time they purchased or sold affected fund shares. Treadway's own brief acknowledges that putting some investors' interests ahead of others constitutes an accepted breach of fiduciary duty (*see* Treadway Br. at 7 ("By putting some investors' interests ahead of others', late-trading also exemplifies a breach of an accepted fiduciary duty.")); he fails to recognize, however, that the SEC's Complaint accuses him of engaging in analogous activities.

It may well be, as Treadway alleges in his motion, that Treadway's market timing-related activities were less egregious than those of other mutual fund executives who entered into undisclosed relationships with Canary or other market timing firms, authorized or engaged in late trading activities, and/or shared or personally benefited from disclosure of nonpublic information concerning the composition of mutual fund portfolios. If Treadway nonetheless personally committed securities fraud, regardless of how "minimal" the fraud may have been when compared to other wrongdoers in the industry, a factfinder may reasonably conclude that the fraud constituted a breach of fiduciary duty involving personal misconduct within the meaning of Section 36(a). The extent to which Treadway breached his fiduciary duties towards investors would go to the issue of Treadway's appropriate punishment for violating Section 36(a), rather than his exposure to liability under that section. *See* 15 U.S.C. § 80a–35(a) (authorizing the Court, if a person is found to have violated Section 36(a), to "award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances").

## II. CORBA'S MOTION TO DISMISS

In his motion, Corba argues that the portions of the Amended Complaint charging him with primary violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5, or Section 34(b) of the Investment Company Act of 1940, 14 U.S.C. § 80a–33(b), and Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), must be dismissed. According to Corba, the Amended Complaint fails to address flaws in the original Complaint that led the Court to dismiss the SEC's claims against him for primary violations of Section 10(b) and Rule 10b–5 thereunder, as well as Section 34(b). Further, Corba argues, the Amended Complaint no

longer contains the factual allegations that led the Court to conclude that violations of Section 17(a) were adequately pled. These arguments are not without force, but cannot prevail under the legal standards established by the Second Circuit and articulated by the Court's Decision and Order.

Corba correctly notes that the original Complaint failed to allege facts sufficient to subject him to primary liability under Section 10(b) and Rule 10b–5 thereunder, or Section 34(b). (*See* Memorandum of Kenneth W. Corba in Support of His Motion to Dismiss the First Amended Complaint, dated Nov. 24, 2004 ("Corba Mem. of Law") at 1–2.) *Pimco I* found that the original Complaint failed to charge Corba with the personal involvement in drafting or communicating the allegedly fraudulent statements, which were contained within the PIMCO Funds' prospectuses, necessary for him to be exposed to primary liability under these sections. *See Pimco I*, 341 F.Supp.2d at 466–67.

*Pimco I* relied on two Second Circuit decisions to explain why the original Complaint failed to charge Corba with primary liability for material misrepresentations or omissions under Sections 10(a), Rule 10b–5, and Section 34(b).[1] As discussed in *Pimco I*, a defendant ordinarily "must actually make a false or misleading statement in order to be held [primarily] liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger primary liability under Section 10(b)." *Id.* at 466 (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir.1998)).[2]

But in a subsequent case, the Second Circuit concluded that an executive with Scholastic Corp. who was not specifically identified as communicating allegedly fraudulent statements could nonetheless be charged with primarily liability under Section 10(b) and Rule 10b–5 because he was alleged "on information and belief" to have personally communicated the misleading statements, "was 'primarily responsible for Scholastic's communications with investors and industry analysts,' and 'was involved in the drafting, producing, reviewing and/or disseminating of the false and misleading statements issued by Scholastic....'" *Id.* (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001)). Unlike the operative complaint in *Scholastic*, however, the SEC's original Complaint against·Corba failed to allege, either directly or on information and belief, that Corba had personally made misleading statements. Nor had the original Complaint claimed that, like the defendant in *Scholastic*, Corba had primary responsibility for development or communication of any of the allegedly misleading statements communicated to investors. Finally, whereas the defendant in *Scholastic* was alleged to have been responsible more generally for all investor communications issued by the company, thus supporting the logical inference that he personally issued the communications that were allegedly misleading in that case, here the original Complaint did not allege that Corba had been in a position where he logically would have been the person actually making the allegedly fraudulent communications. *See id.* at 466–67.

---

1. The Court declined to hold that a third case relied on by the SEC, *SEC v. U.S. Environmental, Inc.*, 155 F.3d 107 (2d Cir.1998), could support a finding of primary liability for securities fraud based solely on communication of material misrepresentations or omissions made by another. *See id.* at 467.

2. As discussed in *Pimco I*, the ambit of Section 34(b)'s prohibition of material misrepresentations and omissions is identical to that of Section 10(b) and Rule 10b–5. *See id.* at 471. Thus, if the SEC's Section 10(b) and Rule 10b–5 claims survive dismissal, its Section 34(b) claims may also be sustained.

The SEC has attempted to correct this deficiency by adding one paragraph to the Amended Complaint that addresses Corba's alleged role in making and communicating the allegedly fraudulent disclosures. The paragraph, number 39 in the Amended Complaint, states as follows:

> Corba knew the PIMCO Funds discouraged market timing and that the market timing arrangement with Canary was an exception to such policy. Further, as CEO of PEA [Capital LLC], the investment sub-adviser at which all of the market timing occurred, as portfolio manager for the PEA Growth Fund, one of the funds that provided timing capacity for Canary, and as portfolio manager for the PEA Select Growth Fund, the fund that received $25 million in sticky assets from Canary, Corba had authority over the content of portions of the fund summary statements within the prospectus. Specifically, he provided information concerning fund investment objectives and guidelines, fund holdings, and fund capitalization. In doing so, Corba knew that such information would be directly incorporated into the prospectus and thereby disseminated to the public. In providing this information, Corba made material misrepresentations and omissions by failing to disclose the sticky asset and market timing arrangement with Canary.

■ The Court concludes that paragraph 39 alleges Corba's primary role in making material omissions with sufficient

particularity to subject him to primary liability for violations of Section 10(b), Rule 10b–5 promulgated thereunder, and Section 34(b).[3] As *Pimco I* articulated, this Court may grant a motion to dismiss for failure to state a claim upon which relief to be granted only if "it appears beyond doubt that the plaintiffs can prove no set of facts in support of his claim which would entitle him to relief." *Pimco,* 341 F.Supp.2d at 463 (quoting *Krimstock v. Kelly,* 306 F.3d 40, 48 (2d Cir.2002) (bracketed text omitted)). All reasonable inferences must be drawn in favor of the nonmoving party. *Id.*

Drawing all reasonable inferences in favor of the SEC in this case, the Court concludes that paragraph 39 could be read to allege that Corba was primarily responsible for portions of the PIMCO Funds' prospectuses, and that he made material omissions in those portions of the prospectuses by failing to use them to disclose the Canary market timing relationship and its potential detrimental effect on several PEA-advised funds. Paragraph 39 begins by articulating Corba's position of primary management responsibility for PEA and for two funds directly affected by the Canary market timing relationship. The paragraph goes on to allege that Corba "had authority over the content of portions of the fund summary statements within the prospectus," which the Court infers as referring to portions of fund summary statements related to funds advised or managed by PEA or Corba personally.

---

**3.** The Court finds that the SEC has not adequately pled Corba's primary liability for issuance of material misrepresentations. Paragraph 39 does not allege that Corba was primarily responsible for the prospectus disclosures concerning market timing, which *Pimco I* concluded could be considered material misrepresentations. Nor does the SEC point to other specific statements contained in the portions of the fund prospectuses for which Corba was allegedly primarily respon-

sible, *i.e.,* disclosures concerning "fund investment objectives and guidelines, fund holdings, and fund capitalization," that are allegedly misleading. Nonetheless, as discussed *infra,* Corba may be charged with material omissions for failing to disclose the Canary relationship, and its potential effect on funds advised or managed by PEA or himself personally, in those sections of the prospectuses for which he was allegedly primarily responsible.

The paragraph continues by alleging that Corba, in his position of authority, provided specific information concerning the funds' "objectives and guidelines, fund holdings, and fund capitalization" that he knew would be "directly incorporated into the prospectus and thereby disseminated to the public."

This paragraph, when so read, corrects each of the defects in the original Complaint articulated by *Pimco I*. First, while the original Complaint failed to allege that Corba personally made misleading statements, *see Pimco I*, 341 F.Supp.2d at 466, paragraph 39 specifically alleges that Corba personally made statements that he knew were misleading, and that he further knew would be communicated to the public. Second, while the original Complaint failed to allege that Corba was "personally and primarily responsible for issuance of misleading communications," *id.* at 467, paragraph 39 claims that Corba "had authority" over portions of fund prospectuses, authority that he allegedly used to make disclosures in those portions containing material omissions. Third, while the original Complaint failed to support the inference that Corba had personally drafted misleading disclosures because it indicated that the prospectuses were issued by entities other than PEA or the funds Corba managed, paragraph 39 of the Amended Complaint now alleges that the prospectuses issued by the PIMCO Funds were composite documents in which Corba had authority over certain sections of the documents. This allegation supports the inference that Corba, in his capacity as PEA's CEO or manager of two of the PIMCO Funds, could have been personally and primarily responsible for making disclosures associated with funds advised by PEA or managed by him.

While the Court agrees with Corba that paragraph 39 of the Amended Complaint fails to allege Corba's primary responsibility for the material misstatements allegedly contained in the PIMCO Funds' prospectuses' market timing policy statements (*see* Amended Complaint ¶ 37), it concludes that the Amended Complaint does not rely exclusively on that section of the prospectuses as a basis for Corba's primary liability. Corba's brief argues that the paragraph of the PIMCO Funds' prospectuses concerning market timing are "the *only* portion of the Funds' 100–plus page prospectus that is alleged to have been false or misleading." (Corba Mem. of Law at 5 (emphasis in original).) But, as discussed above, paragraph 39 could be read to allege that the portions of the prospectuses that Corba was personally responsible for "drafting, producing, reviewing and/or disseminating," *Scholastic*, 252 F.3d at 76, were themselves fraudulent in that they contained material omissions. Under this logic, Corba could be found to have personally committed securities fraud by failing to include in the portions of the prospectuses for which he had primary responsibility information concerning PEA's relationship with Canary that he knew or should have known was material to the public. Further, as the SEC points out in its opposition brief, Corba, who allegedly negotiated the Canary relationship and had extensive dealings with Canary as CEO of PEA and manager of two funds affected by the relationship, was in a unique position to disclose the Canary arrangement, and its effect on PEA-advised funds, in sections of the prospectuses for which he had primary responsibility. (Plaintiff's Opposition to Defendant Corba's Motion to Dismiss First Amended Complaint, dated Dec. 9, 2004 ("SEC Opp'n Br.") at 4.) Thus it would not be unreasonable to charge Corba with primary liability under Section 10(b), Rule 10b–5 thereunder, and Section 34(b), for failing to disclose mate-

318

rial information concerning the Canary relationship in the portions of the prospectuses that he allegedly controlled.

The Court also rejects Corba's motion to dismiss the SEC's claim against him under Section 17(a) of the Securities Act. The Court agrees with Corba that the Section 17(a) claim against Corba may no longer be sustained on the basis of his alleged facilitation of PEA's selective disclosure of portfolio holdings, as discussed in *Pimco I*, 341 F.Supp.2d at 470, because those allegations are no longer contained in the operative Amended Complaint. Corba may now be charged with primary liability for securities fraud on the basis of his alleged material omissions, however. Just as the Court concluded in *Pimco I* that Treadway may be held liable under Section 17(a) for his alleged material misrepresentations and omissions, *see id.* at 469–70, the Court concludes now that Corba's own alleged material omissions, having been adequately pled by the SEC in the Amended Complaint, may serve as the basis for his liability under Section 17(a).

### III. *ORDER*

For the reasons discussed above, it is hereby:

**ORDERED** that defendant Stephen J. Treadway's motion for reconsideration of the Court's Decision and Order dated October 22, 2004, is hereby denied; and it is further

**ORDERED** that defendant Kenneth W. Corba's motion to dismiss the SEC's First Amended Complaint is hereby denied.

**SO ORDERED.**